******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DANIEL MULVIHILL *v.* KARA SPINNATO
(AC 45829)

Elgo, Moll and Seeley, Js.

*Syllabus*

The defendant appealed from the trial court's judgment denying her special motion to dismiss the plaintiff's defamation action pursuant to the anti-SLAPP statute (§ 52-196a), claiming that the court improperly concluded that the plaintiff met his burden under § 52-196a of establishing probable cause that he would prevail on the merits of his complaint. *Held*:

The trial court properly denied the defendant's motion to dismiss, this court having concluded that, viewing the pleadings and affidavits of the parties in the light most favorable to the plaintiff, the plaintiff satisfied the relatively minimal burden under § 52-196a of establishing probable cause that he would prevail on the merits of his complaint.

Argued April 16—officially released October 22, 2024

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Brazzel-Massaro, J.*, rendered judgment denying the defendant's special motion to dismiss, from which the defendant appealed to this court. *Affirmed.*

*Jack G. Steigelfest*, with whom, on the brief, was *Thomas P. Cella*, for the appellant (defendant).

*Daniel Mulvihill*, self-represented, the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Kara Spinnato, known also as Kara Callahan, appeals from the judgment of the trial court denying her special motion to dismiss filed pursuant to Connecticut's anti-SLAPP statute, General

Statutes § 52-196a,[1] in this defamation action brought by the self-represented plaintiff, Daniel Mulvihill. On appeal, the defendant claims that the court improperly concluded that the plaintiff met his burden under § 52-196a of establishing probable cause that he will prevail on the merits of his complaint.[2] We affirm the judgment of the trial court.

At the outset, we note that § 52-196a constitutes a "special statutory benefit"; *Lafferty* v. *Jones*, 336 Conn. 332, 372, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021); that "provides a moving party with the opportunity to have [a] lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). As this court has observed, "[a] special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy." *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021); see also *Smith* v.

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

Our Supreme Court recently held that "the denial of a special motion to dismiss based on a *colorable claim* of a right to avoid litigation under § 52-196a is an immediately appealable final judgment . . . ." (Emphasis in original.) *Smith* v. *Supple*, 346 Conn. 928, 960, 293 A.3d 851 (2023). Because the defendant has raised a colorable claim under § 52-196a, we conclude that she properly has appealed from the judgment denying her special motion to dismiss.

[2] The defendant also claims that the court improperly concluded that she failed to meet her burden of establishing that the conduct in question falls within the ambit of the anti-SLAPP statute. In light of our conclusion that the court properly determined that the plaintiff had established probable cause pursuant to § 52-196a, we do not consider that contention.

*Supple*, 346 Conn. 928, 965, 293 A.3d 851 (2023) (*D'Auria, J.*, dissenting) ("[o]n an expedited basis and on a quickly assembled record, a trial judge serves as a gatekeeper, promptly weeding out and dismissing lawsuits that plainly have been filed for [an] illegitimate purpose"). Section 52-196a (e) (2) instructs that, "[w]hen ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based." Our recitation of the relevant facts is gleaned from such materials in the record before us.[3]

The plaintiff has been a licensed real estate broker since 1999.[4] The defendant, who was a licensed real estate agent from 2010–2016, at all relevant times maintained a Realtor profile on zillow.com (Zillow).[5] The

---

[3] Prior to oral argument before this court, the defendant moved to strike portions of the plaintiff's appellate brief and appendix on the ground that it purported to introduce evidence that had not been presented to the trial court. We granted that motion and ordered stricken several paragraphs contained therein. In our consideration of the present appeal, we have disregarded that stricken material.

[4] In his objection to the special motion to dismiss, the plaintiff stated that he "has been a licensed real estate broker for over twenty-three years. The plaintiff is licensed in Connecticut, New York, Florida and Rhode Island. He holds designations/certifications in the following: GRI: Graduate of Real Estate Institute, SRES: Senior Residential Specialist, AWHD At Home with Diversity, ABR Accredited Buyer Representative, CIPS Certified International Property Specialist, and SFR Short Sale Foreclosure Specialist. He was the president of the Northern Fairfield County Association of Realtors in 2012, he has served on the legislative committee with the Connecticut Realtor Association and has been a member of the board for CTR and a board member for NFCAR. The plaintiff has been a moderator for political forums sponsored by NFCAR. He is a certified safety instructor for the National Association of Realtors and teaches Realtors safety measures throughout Connecticut and New York."

[5] "Zillow is an online real estate marketplace website that offers comprehensive real estate market data, including estimated values of real property." *Wahba* v. *JPMorgan Chase Bank, N.A.*, 349 Conn. 483, 490 n.3, 316 A.3d 338 (2024); see also *San Diego* v. *Invitation Homes, Inc.*, Docket No. 22-cv-260-L (MDD), 2023 WL 35217, *1 n.2 (S.D. Cal. January 3, 2023) (Zillow "hosts a database of homes for sale, homes for rent, and homes not currently

defendant also is a licensed notary public. At all relevant times, the defendant was the conservator of her uncle, who was suffering from dementia and owned real property known as 31 Skyline Drive in Danbury (property).

In November, 2021, the defendant contacted the plaintiff about a potential sale of the property. The plaintiff met with the defendant and toured the property on November 15, 2021.[6] At that time, the residence on the property "was not habitable" and the parties had to enter from the rear, where a doorway "was boarded up with a piece of ply-wood and a pad-lock." The parties met the defendant's husband, a general contractor, in the basement and discussed possible rehabilitation costs.[7] With respect to a potential sales price for the

on the market as well as home value and rent estimates, among other home-related information"). The defendant at the present time continues to maintain a Realtor profile on Zillow. See https://www.zillow.com/profile/Kara-Spinnato (last visited October 8, 2024).

[6] In his complaint and his affidavit, the plaintiff avers that the November 15, 2021 meeting at the property lasted ten minutes. In her affidavit, the defendant states that the meeting lasted approximately forty-five minutes.

[7] The respective affidavits of the parties contain differing accounts of what transpired once they entered the basement. In her affidavit, the defendant states in relevant part that the plaintiff "met my husband in the basement of the home and seemed to focus more on discussing his suggestions with my husband rather than with me, even though I was the person in charge of selling the house. His conduct gave me the feeling that he was discriminating against me because I am a woman. He told me and my husband that it would cost $100,000 to rehabilitate the house. He suggested that we could list the house for sale at $150,000 and that we might get an offer of $140,000. He commented that he was involved in the sale of another house on the same street and said 'we flipped it,' giving me the impression that he was interested in a quick turn over of the property rather than selling the property at the best possible price. Given the market for houses at that time, I concluded that his suggestion of a listing price of $150,000 was very low."

In his affidavit, the plaintiff offered a different account, stating in relevant part: "The defendant['s] husband and I had a brief conversation in the basement . . . about him being a general contractor and we discussed how much it would cost to [rehabilitate the residence]. At the time he was throwing items off a workbench into a garbage can. He said he was in a hurry [be]cause he had to get back to the other side of the state. He kept telling me that I will get you the code for the pad lock on the back door. . . . I never told the defendant that 'I [f]lipped [a] [h]ouse [n]earby.' I never

property, the plaintiff alleges in his complaint and in his sworn affidavit that he provided a comparative market analysis to the defendant "for \$210,900" during the November 15, 2021 meeting. In her affidavit, the defendant states that the plaintiff "never provided me with a comparative market analysis . . . ."

On November 18, 2021, the plaintiff sent the defendant an email, in which he stated: "Hi Kara, [j]ust checking in with you. I have been thinking about the property, and would recommend a hold harmless agreement due to [the] condition of the property. Also in the listing, I would include that only principals and decision makers enter the property. I wouldn't want a family to go in with children and get hurt. A safety precaution. I am attaching a hold harmless that I use often. Thanks, Daniel." The defendant replied to that email, stating: "Thank you Daniel. That makes good sense. I am waiting to hear a proposal from one more realtor and I will be in touch later today or tomorrow. Have a great day."

The defendant thereafter retained the services of another real estate agent, who listed the property for \$200,000 on November 26, 2021.[8] On November 29, 2021,

had [an] ownership [interest in a nearby house], nor did I ever make that statement. I said that my client flipped [a nearby] property. I never had a financial interest either direct or indirect, or derived any benefit except my commission. . . . I made the conversation [in the basement] brief since [the defendant and her husband] were both in a hurry. The meeting did not drag on, nor did I direct the conversation to the defendant['s] husband. I had more conversation about the defendant['s] uncle than we did about the home. Besides [the defendant's husband] was bending down and picking items up off a work bench and the floor. It was poor lighting and I knew they were on a time schedule and needed to leave. The defendant told me about her children. She was very pleasant during our brief meeting."

[8] The parties disagree as to whether the defendant informed the plaintiff that she would not be working with him following their November 18, 2021 email exchange. In her affidavit, the defendant avers that she subsequently "informed [the plaintiff] that [she] would not be working with him." By contrast, the plaintiff states in his affidavit that "[t]he defendant never informed me whether or not she was listing the property with me despite the fact that she said she did in her 'sworn affidavit.'"

the defendant accepted an offer to purchase the property for $252,900; the real estate closing transpired on February 9, 2022.

On March 28, 2022, the defendant posted a review of the plaintiff on Zillow under the name "Kara Callahan."[9] That post was titled "Will never recommend" and stated: "[The plaintiff] worked with me on an opportunity to be our selling agent for my [u]ncle's home. [The plaintiff] could not seem to handle being professional. Furthermore he told me he'd advise listing the home we were selling at $100k less [than] we actually got when it sold within 48 hours with another agent. I have a feeling he was never going to list it rather bring in a cash buying friend (house was a big rehab project). I have never dealt with such a shady individual. Buyer and Seller beware!!"

In response, the plaintiff commenced this defamation action on April 21, 2022. His one count complaint alleged that the defendant's Zillow post was defamatory and, by way of relief, sought removal of the post, as well as monetary and injunctive relief.

After her attorney filed an appearance on June 2, 2022, the defendant filed a special motion to dismiss pursuant to § 52-196a, claiming that her Zillow post "was an exercise of her right to free speech in connection with matters of public concern." The plaintiff filed an objection to that motion, in which he argued that "[t]he statements made [in the Zillow post] were false statements, designed to impugn and damage the professional reputation of the plaintiff and deter third persons from associating or dealing with the plaintiff. [They] were designed and calculated specifically to injure the plaintiff in his business and profession." He further stated that the defendant "was deceptive in writing the review using her maiden name Kara Callahan and not

---

[9] Kara Callahan is the defendant's maiden name.

her legal name Kara Spinnato. . . . [T]he defendant hid behind her maiden name in order to defame the plaintiff after the fact." The plaintiff also recited various factual allegations to support his contention that he had presented sufficient evidence to establish probable cause that he will prevail on the merits of his complaint.

The court held a hearing on the defendant's special motion to dismiss on August 8, 2022. At that time, the court invited the parties to submit sworn affidavits. Both parties did so days later.[10]

In its September 2, 2022 memorandum of decision, the court first determined that, although Zillow constituted a public forum for purposes of § 52-196a, the defendant's post did not involve a matter of public concern. The court further concluded that the plaintiff had met his statutory burden of establishing probable cause that he will prevail on the merits of his complaint. The court thus denied the defendant's special motion to dismiss, and this appeal followed.[11]

As a preliminary matter, we note that the inquiry mandated by § 52-196a is twofold in nature. Pursuant to § 52-196a (e) (3), a party that files a special motion to dismiss bears the initial burden of demonstrating, by a preponderance of the evidence, "that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern . . . ." If that burden is met, the burden shifts to the party that brought the complaint to demonstrate "that there is

_____

[10] The defendant also submitted an affidavit from her husband, Joe Spinnato. His affidavit contains an account of what transpired in the basement meeting on November 15, 2021, that is largely identical to that set forth in his wife's affidavit.

[11] There is no indication in the record before us that the plaintiff sought an award of costs as the prevailing party pursuant to § 52-196a (f) (2).

probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3). For a special motion to dismiss to be granted, the court must resolve both prongs in favor of the moving party.

In the present case, the court resolved both prongs in favor of the nonmoving party, the plaintiff.[12] To succeed in this appeal, the defendant therefore must demonstrate that the court committed reversible error with respect to both prongs of the test set forth in § 52-196a (e) (3). Accordingly, we may address either prong of that test in resolving her appeal.[13] In the present case,

---

[12] When a court is presented with a motion to dismiss predicated on subject matter jurisdictional grounds, "it must be immediately acted upon by the court. . . . [A]ll other action in the case must come to a halt until such a determination is made." (Citations omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). If the court concludes that the action must be dismissed for lack of subject matter jurisdiction, it "need not, and cannot, consider" additional claims raised by a defendant. (Internal quotation marks omitted.) *Haydusky's Appeal from Probate*, 220 Conn. App. 267, 276, 297 A.3d 1072 (2023); see also *Weiss* v. *Weiss*, 297 Conn. 446, 451 n.5, 998 A.2d 766 (2010) (conclusion that court lacks subject matter jurisdiction "by its very nature precludes the court from considering the merits" of nonjurisdictional claims); *State* v. *Despres*, 220 Conn. App. 612, 624 n.9, 300 A.3d 637 (2023) ("because the court had determined . . . that it did not have subject matter jurisdiction, it therefore should not have addressed the claim on the merits, and the court's analysis and conclusion regarding the merits of the defendant's arguments constitute dicta").

Special motions to dismiss, by contrast, do not implicate the subject matter jurisdiction of the court. See *Elder* v. *Kauffman*, supra, 204 Conn. App. 824. For that reason, it was entirely appropriate for the trial court, for prudential reasons, to address both prongs of § 52-196a (e) (3).

[13] Our precedent recognizes, in a variety of contexts, the discretion of a reviewing court to focus on whichever prong of a multifactor test that it deems most relevant to resolving the appeal. See, e.g., *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989) (because appellant's claim will fail if it cannot satisfy any prong of multifactor test for unpreserved claims of constitutional error, "[t]he appellate tribunal is free . . . to respond to the [appellant's] claim by focusing on whichever condition is most relevant in the particular circumstances"); *Dills* v. *Enfield*, 210 Conn. 705, 717, 557 A.2d 517 (1989) (explaining that impracticability doctrine is governed by multifactor test and that reviewing court need not address all prongs of test if court concludes that party failed to establish any prong); *McDonnell* v. *Roberts*, 224 Conn. App. 388, 400, 312 A.3d 1103 (2024) (explaining that motion to open default judgment is governed by two-pronged test in which

we focus our attention on whether the plaintiff met his burden of establishing probable cause that he will prevail on the merits of his complaint. We conclude that the plaintiff satisfied that burden.[14]

appellant's "failure . . . to meet either prong is fatal" and concluding that reviewing court "need not address the [appellant's] arguments as to the first prong" in light of conclusion that she had not satisfied second prong of test); *Delgado* v. *Commissioner of Correction*, 224 Conn. App. 283, 291–92, 311 A.3d 740 ("[i]t is axiomatic that courts may decide against a petitioner on either prong [of the two-pronged test for ineffective assistance of counsel claims], whichever is easier"), cert. denied, 349 Conn. 902, 312 A.3d 585 (2024); *State* v. *Chester J.*, 204 Conn. App. 137, 156 n.13, 253 A.3d 971 ("[b]ecause the test for an equal protection violation in jury selection procedures is stated in the conjunctive, we need not address either of the other two prongs, as a failure of proof on any of the prongs defeats the claim"), cert. denied, 337 Conn. 910, 253 A.3d 493 (2021); *Stratford* v. *Winterbottom*, 151 Conn. App. 60, 78, 95 A.3d 538 ("[b]ecause a cause of action for money had and received requires proof of two prongs, [a reviewing court] may affirm the judgment of the trial court" if plaintiff failed to satisfy either prong and reviewing court "need not address" both prongs), cert. denied, 314 Conn. 911, 100 A.3d 403 (2014).

[14] In light of that conclusion, we do not address the defendant's claim that the court improperly concluded that she failed to meet her burden of establishing that the conduct in question falls within the ambit of the anti-SLAPP statute. We note that the statutory scheme set forth in § 52-196a is of recent vintage and existing appellate case law is scant on precisely what constitutes "a matter of public concern," as that term is used therein. That term is defined in § 52-196a (a) (1) as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ." At oral argument before this court, the defendant's counsel clarified that the defendant's exercise of free speech in this case allegedly involved an issue related to "community well-being," as provided for in § 52-196a (a) (1) (B).

"[C]ommunity well-being" is not defined in our anti-SLAPP statute. It is a nebulous, broadly worded, and potentially far-reaching term. If the defendant here is correct that a real estate agent's conduct is a matter of community concern sufficient to preclude actions regarding defamatory statements, is the same not true for the conduct of other licensed professionals in the community, such as teachers, child care providers, or plumbers? Broadly construed, a matter of "community well-being" may pertain to the conduct of any business establishment that is open to the public. Because we conclude that the plaintiff in this case satisfied the probable cause prong of § 52-196a (e) (3), prudence dictates that we leave for another day the question of statutory interpretation regarding matters of community well-being under § 52-196a (a) (1) (B).

"[T]he existence of probable cause is a question of law to be decided by the court. . . . Accordingly, our review of the court's determination that probable cause existed is plenary." (Citation omitted; internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 213 Conn. App. 841, 846, 278 A.3d 624, cert. denied, 345 Conn. 911, 283 A.3d 506 (2022); see also *State* v. *Jones*, 320 Conn. 22, 70 n.26, 128 A.3d 431 (2015) ("whether a set of facts is sufficient to satisfy the probable cause standard is subject to plenary review"). In the context of special motions to dismiss, the determination as to whether probable cause exists entails consideration of the "pleadings and supporting and opposing affidavits of the parties . . . ." General Statutes § 52-196a (e) (2).

"The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *Elder* v. *Kauffman*, supra, 204 Conn. App. 825. "Proof of probable cause is not as demanding as proof by preponderance of the evidence"; id.; and is " 'substantially less than that required for conviction' " under the reasonable doubt standard. *State* v. *Eady*, 249 Conn. 431, 439–40, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999). Probable cause is a "modest" standard; *United States* v. *Sanders*, 106 F.4th 455, 463 (6th Cir. 2024); that "requires a plaintiff to show more than that success is . . . merely plausible . . . ." (Internal quotation marks omitted.) *Sentementes* v. *Lamont*, Docket No. 3:21-cv-453 (MPS), 2021 WL 5447125, *2 (D. Conn. November 22, 2021); see also *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 442, 39 A.3d 1139 (2012) (noting "the very low burden of proof required" under probable cause standard); *Malden* v. *State*, 359 So. 3d 442, 445 (Fla. App. 2023) ("[p]robable cause is not rigid

nor is it a standard that is particularly difficult to meet—probable cause is a relatively low legal burden").

In concluding that the plaintiff had established probable cause pursuant to § 52-196a (e) (3), the court determined that the defendant's Zillow post contained an objective statement of fact. On appeal, the defendant argues that the post constituted mere opinion, which cannot form the basis of an action for defamation. See *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112 (1999) ("[t]o be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion"). We disagree.

As our Supreme Court has explained, "[a] statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . An opinion, on the other hand, is a personal *comment* about another's conduct, qualifications or character that has some basis in fact. . . . This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the *context* that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated. . . . [W]hile this distinction may be somewhat nebulous . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 111–12, 448 A.2d 1317 (1982). "Where the court cannot reasonably characterize the allegedly [defamatory] words as either fact or opinion . . . this becomes an issue of fact for the jury . . . ." Id., 112

n.5; see also *NetScout Systems, Inc.* v. *Gartner, Inc.*, 334 Conn. 396, 428, 223 A.3d 37 (2020) ("in defamation cases, a jury issue can arise when an expression of opinion contains an ambiguity that reasonably can be understood to convey by implication an actionable factual assertion").

In the present case, the defendant concedes that her Zillow post contained an objective statement of fact. In her appellate brief and at oral argument before this court, the defendant acknowledged that her statement that the plaintiff "told me he'd advise listing the [property] at $100k less [than] we actually got" was a "factual statement." She nonetheless contends that the plaintiff cannot establish probable cause because he did not "rebut" that factual statement or offer any "proof that it was not true." The record indicates otherwise.

In his complaint and his sworn affidavit, the plaintiff averred that he provided a comparative market analysis to the defendant "for $210,900" at the November 15, 2021 meeting. A comparative market analysis is a tool commonly used by real estate professionals to provide sellers with a proposed sales price.[15] The purpose of a comparative market analysis "is to get an idea of what to list a property for [in order] to put the property on the market." (Internal quotation marks omitted.) *Rover Pipeline, LLC* v. *Rover Tract*, Docket No. 5:18-CV-68 (LEAD), 2021 WL 3424270, *6 (N.D. W. Va. August 5, 2021); see also *Pellet* v. *Keller Williams Realty Corp.*, 177 Conn. App. 42, 66, 172 A.3d 283 (2017) (real estate expert testified "how a comparative market analysis . . . is generated for a client's property" to arrive at "a recommended list price"); *Showah* v. *Korogodon,*

---

[15] A comparative market analysis also is referred to as a "broker price opinion." See, e.g., *Securities & Exchange Commission* v. *Fujinaga*, Docket No. 2:13-CV-1658 JCM (CWH), 2017 WL 4369467, *2 (D. Nev. October 2, 2017); *North Carolina Dept. of Transportation* v. *Mission Battleground Park, DST*, 370 N.C. 477, 479, 810 S.E.2d 217 (2018).

Docket No. FA-16-6013342-S, 2020 WL 5984774, *2 (Conn. Super. September 3, 2020) (real estate professional performed comparative market analysis to determine "a reasonable sales price"); *Taveres-Doram* v. *Doram*, Docket No. FA-04-4002471-S, 2007 WL 155155, *4 (Conn. Super. January 2, 2007) (Realtor provided comparative market analysis predicated on recent sales of similar properties that was basis for recommended sales price). Because the record indicates that the defendant was a licensed real estate agent in this state for more than one half of a decade, it is reasonable to infer that she was familiar with comparative market analyses and their purpose.

Furthermore, the self-represented plaintiff responded to the defendant's special motion to dismiss by filing a timely objection thereto.[16] In that objection, the plaintiff reiterated that he had "presented the defendant with a [comparative market analysis] in the amount of $210,900." He further maintained that the defendant subsequently listed the property for "$10,900 less than the [comparative market analysis] presented to the defendant." His position, in short, was that he recommended a sales price *greater* than the property's $200,000 listing price. The plaintiff's complaint, his affidavit, and his objection to the special motion to dismiss all belie the defendant's claim that the plaintiff did nothing to rebut the factual statement contained in her Zillow post that the plaintiff advised her to list the property for $100,000 less than its $252,900 sales price.

---

[16] We note that "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants . . . ." (Internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497, 863 A.2d 680 (2005); see also *State* v. *Mark T.*, 339 Conn. 225, 233, 260 A.3d 402 (2021) ("[a]lthough the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law . . . we, nevertheless, give great latitude to [self-represented] litigants in order that justice may both be done and be seen to be done" (citation omitted; internal quotation marks omitted)).

This case thus involves an issue of material fact regarding the statement contained in the defendant's Zillow post. The plaintiff steadfastly has averred that he provided a comparative market analysis to the defendant at the November 15, 2021 meeting that recommended a sales price of $210,900. In her sworn affidavit, the defendant disputes that factual assertion and avers that the plaintiff "never provided me with a comparative market analysis . . . ." Accordingly, this is not a case in which critical facts are not in dispute, as the defendant's counsel suggested at oral argument before this court. Rather, this case involves a disputed issue of material fact regarding the Zillow post made by the defendant, as reflected in the pleadings and the affidavits of the parties. See General Statutes § 52-196a (e) (2).

In this regard, we note that this court previously has observed that the procedural mechanism embodied in § 52-196a is "similar to a motion for summary judgment." *Elder* v. *Kauffman*, supra, 204 Conn. App. 824. Under Connecticut law, courts reviewing such motions are obligated to construe the pleadings, affidavits, and other proof submitted in the light most favorable to the nonmoving party. See *Dubinsky* v. *Black*, 185 Conn. App. 53, 71, 196 A.3d 870 (2018). Other courts have taken a similar approach in applying their anti-SLAPP statutes. As the Supreme Court of California explained: "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by [the anti-SLAPP statute]. . . . If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have

described this second step as a summary-judgment-like procedure. . . . The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. . . . [C]laims with the requisite minimal merit may proceed." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Baral* v. *Schnitt*, 1 Cal. 5th 376, 384–85, 376 P.3d 604, 205 Cal. Rptr. 3d 475 (2016); see also *Reeves* v. *Associated Newspapers, Ltd.*,     App. Div. 3d    ,     ,     N.Y.S.3d     (2024) (motion to dismiss filed pursuant to New York anti-SLAPP statute "is analogous to an accelerated summary judgment motion").

Moreover, as the Supreme Judicial Court of Maine has noted: "Other states . . . use different standards to be applied when reviewing a motion brought under their respective anti-SLAPP statutes. . . . What [they] all have in common is that when there are disputed facts, the nonmoving party is given all favorable inferences." (Citations omitted.) *Thurlow* v. *Nelson*, 263 A.3d 494, 501 n.5 (Me. 2021). Construing the pleadings and affidavits of the parties filed in connection with a special motion to dismiss pursuant to § 52-196a in the light most favorable to the nonmoving party is consistent with the approach taken in other jurisdictions when applying anti-SLAPP statutes.[17] Such an approach also

_____

[17] See, e.g., *Roche* v. *Hyde*, 51 Cal. App. 5th 757, 787, 265 Cal. Rptr. 3d 301 (2020) ("we must draw every legitimate favorable inference from the [anti-SLAPP] plaintiff's evidence" (internal quotation marks omitted)); *L.S.S.* v. *S.A.P.*, 523 P.3d 1280, 1286 (Colo. App. 2022) (special motion to dismiss filed pursuant to Colorado anti-SLAPP statute entails summary judgment-like procedure where court accepts plaintiff's evidence as true), cert. denied, Colorado Supreme Court (July 17, 2023) (No. 22SC880); *American Civil Liberties Union, Inc.* v. *Zeh*, 312 Ga. 647, 652–53, 864 S.E.2d 422 (2021) (motion to strike filed pursuant to Georgia anti-SLAPP statute involves summary judgment-like procedure where court is obligated to accept as

comports with "a fundamental policy consideration in this state. Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) *Egri* v. *Foisie*, 83 Conn. App. 243, 249–50, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); accord *Lafferty* v. *Jones*, supra, 336 Conn. 380 (in § 52-196a context, noting "the policy preference to bring about a trial on the merits of a

---

true evidence favorable to plaintiff); *Wynn* v. *Associated Press*, Nev. , , 555 P.3d 272 (2024) (in ruling on motion to dismiss pursuant to Nevada anti-SLAPP statute, "the evidence, and any reasonable inferences drawn from it, must be viewed in [the] light most favorable to the nonmoving party" (internal quotation marks omitted)); *Mohabeer* v. *Farmers Ins. Exchange*, 318 Or. App. 313, 316–17, 508 P.3d 37 ("[w]e review a trial court's ruling on a special motion to strike [pursuant to the Oregon anti-SLAPP statute] for legal error, viewing the evidence and drawing all reasonable inferences in the light most favorable to the plaintiff"), review denied, 370 Or. 212, 519 P.3d 536 (2022); *Charles* v. *McQueen*, 693 S.W.3d 262, 281 (Tenn. 2024) ("[a]s is the case when a court rules on a motion for summary judgment or motion for directed verdict, the court [in ruling on a motion to dismiss pursuant to Tennessee's anti-SLAPP statute] should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence"); *ML Dev, LP* v. *Ross Dress for Less, Inc.*, 649 S.W.3d 623, 627 (Tex. App. 2022) (courts "view the pleadings and evidence in a light most favorable to the plaintiff non-movant" in ruling on motion to dismiss pursuant to Texas anti-SLAPP statute); *Kruger* v. *Daniel*, Docket No. 43155-6-II, 2013 WL 5339143, *3 n.4 (Wn. App. September 17, 2013) (unpublished opinion) (stating that process set forth in Washington anti-SLAPP statute "is identical to that of summary judgment" and court must "accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law" (internal quotation marks omitted)).

dispute whenever possible and to secure for the litigant his day in court" (internal quotation marks omitted)). Accordingly, when disputed issues of fact arise in the context of a special motion to dismiss, we view the pleadings and affidavits of the parties in the light most favorable to the nonmoving party.

Viewed in that light, we conclude that the plaintiff in the present case has alleged sufficient facts, if credited by the trier of fact, to establish probable cause that he will prevail on the merits of his complaint. Specifically, the plaintiff has alleged that he provided the defendant with a comparative market analysis that recommended a sales price of $210,900 for the property— a figure greater than the listing price ultimately agreed to by the defendant with another real estate agent. That allegation stands in stark contrast to the defendant's statement in the Zillow post that the plaintiff advised her to list the home for $100,000 less than its sales price. If the trier of fact were to find that the plaintiff provided a comparative market analysis recommending a sales price of $210,900 and did not advise the defendant to list the property for "$100k less [than] we actually got" as the defendant stated in the Zillow post, the plaintiff may well prevail on his complaint. See *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 228, 837 A.2d 759 (2004) ("for a claim of defamation to be actionable, the statement must be false"); see also 3 Restatement (Second), Torts § 566, comment (a), pp. 170–71 (1977).[18]

---

[18] The Restatement (Second) of Torts offers historical context regarding expressions of opinion in defamation actions, stating: "If the expression of opinion was on a matter of public concern, it was a form of privileged criticism, customarily known by the name of fair comment. The privilege extended to an expression of opinion on a matter of public concern so long as it was the actual opinion of the critic and was not made solely for the purpose of causing harm to the person about whom the comment was made, regardless of whether the opinion was reasonable or not. . . . [*T*]*he privilege of fair comment applied only to an expression of opinion and not to a false statement of fact*, whether it was expressly stated or implied from an

In his affidavit, the plaintiff also alleges facts that raise a question as to the defendant's credibility with respect to her publication of the Zillow post. In his objection to the special motion to dismiss, the plaintiff alleged that the defendant purposely and deceptively published the Zillow review in her maiden name. See footnote 9 of this opinion. In response, the defendant in her August 5, 2022 affidavit stated in relevant part that "[t]he post appeared under my maiden name of Kara Callahan because the last time I posted anything on Zillow was before I was married and my account was still in my maiden name. I did not intend to conceal my identity from viewers of my post." In his August 12, 2022 affidavit, the plaintiff avers that those statements are directly contradicted by the fact that the defendant's Zillow account at that time was under the name "Kara Spinnato." Attached as exhibit A to the plaintiff's affidavit is a copy of the defendant's Zillow profile, which features a photograph next to the name "Kara Spinnato." That exhibit also indicates that the defendant had been a Zillow member since 2014 and that her "screenname" is "Kara Spinnato." The respective affidavits of the parties thus raise a factual dispute regarding the defendant's publication of the Zillow post, which bears on the credibility of the defendant. If the plaintiff's allegations are credited in this regard, it further supports the court's conclusion that he demonstrated probable cause pursuant to § 52-196a (e) (3).

The context of the defendant's Zillow post also is highly relevant to the present inquiry. As our Supreme Court has observed, "the distinction between actionable statements of fact and nonactionable statements of opinion is not always easily articulated or discerned. . . . Context is a vital consideration in any effort to distinguish a nonactionable statement of opinion from

expression of opinion." (Emphasis added.) 3 Restatement (Second), supra, § 566, comment (a), p. 171.

an actionable statement of fact." (Citations omitted.) *NetScout Systems, Inc.* v. *Gartner, Inc.*, supra, 334 Conn. 411–12. To aid in distinguishing opinion from fact, the court has articulated "three basic, overlapping considerations: (1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggests a statement of evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification." Id., 414.

The circumstances in which the Zillow post was made are not disputed. The defendant at that time maintained a Realtor profile on Zillow, which states that she is a "[h]ighly experienced sales professional." As a result, readers of her post may have inferred expertise on her part with respect to real estate practices and transactions. Moreover, in her appellate brief, the defendant cites to General Statutes § 20-314 and states that "consumers are entitled to assume that 'only . . . persons who bear a good reputation for honesty, truthfulness and fair dealing and who are competent to transact the business of a real estate broker or real estate salesperson' will hold real estate licenses . . . ."[19] As applied to the circumstances of this case, that proposition suggests that readers of the defendant's Zillow post were entitled to assume that she was speaking honestly and truthfully in light of her experience as a real estate professional, which may have led them to expect an objective perspective from the defendant.

The nature and tenor of the actual language used by the defendant is less helpful. The defendant concedes

---

[19] General Statutes § 20-314 (a) provides: "[Real estate] [l]icenses shall be granted under this chapter only to persons who bear a good reputation for honesty, truthfulness and fair dealing and who are competent to transact the business of a real estate broker or real estate salesperson in such manner as to safeguard the interests of the public."

that it contains an objective statement of fact regarding the plaintiff's purported sales price advice. At the same time, the Zillow post contains other statements that appear to constitute opinion, rather than statements of fact. Those statements nonetheless must be viewed in the full context of the post, which centers on the defendant's objective statement of fact that the plaintiff advised listing the property for $100,000 less than its actual value as reflected by the sales price. That statement of fact informs and is intertwined with the opinion statements that follow in the post. A fair reading of the defendant's Zillow post is that it is precisely because the plaintiff recommended an exorbitantly low sales price that the defendant had "a feeling [that the plaintiff] was never going to list [the property] rather bring in a cash buying friend" and thought that he was a "shady individual" of whom buyers and sellers should beware.

Importantly, the critical statement of fact in the defendant's Zillow post is subject to objective verification. Although the defendant stated that the plaintiff advised her to list the property for "$100k less [than] we actually got," the plaintiff provided a sworn affidavit indicating that he provided her with a comparative market analysis that recommended a sales price of $210,900 for the property. The defendant denied that averment, creating an issue of material fact to be resolved by the trier of fact.[20] See *Cweklinsky* v. *Mobil Chemical Co.*,

---

[20] We note that no discovery has taken place in this case, as the court ordered a stay of "all discovery" upon the filing of the special motion to dismiss in accordance with § 52-196a (d). The parties, therefore, have not yet had an opportunity to depose each other. See *Tryon* v. *North Branford*, 58 Conn. App. 702, 716, 755 A.2d 317 (2000) ("[d]eposition testimony often . . . calls into question the credibility of the deponent"); *Gellman* v. *Latimore*, 242 App. Div. 2d 920, 921, 665 N.Y.S.2d 377 (1997) ("[D]efendant has not yet had the opportunity to depose plaintiff. Summary judgment is inappropriate where, as here, the existence of essential facts depends upon knowledge exclusively within the possession of the moving party and [such facts] might well be disclosed by . . . examination before trial or further disclosure." (Internal quotation marks omitted.)).

supra, 267 Conn. 229 ("the determination of the truthfulness of a statement is a question of fact for the jury").

In light of the foregoing, we cannot conclude that the defendant's Zillow post constituted mere opinion. We are mindful that anti-SLAPP motions to dismiss are designed to weed out meritless claims at an early stage of litigation; see *Baral* v. *Schnitt*, supra, 1 Cal. 5th 384; and that, with respect to the second prong of § 52-196a (e) (3), they are governed by a minimal legal standard. See *Elder* v. *Kauffman*, supra, 204 Conn. App. 825; *People's United Bank* v. *Kudej*, supra, 134 Conn. App. 442; see also *Mindys Cosmetics, Inc.* v. *Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("the second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong"); cf. *Priore* v. *Haig*, supra, 344 Conn. 670 (*D'Auria, J.*, concurring) ("the special motion to dismiss permitted under § 52-196a is easily defeated under a probable cause standard"). Moreover, the precedent of our Supreme Court instructs that "[w]here the court cannot reasonably characterize the allegedly [defamatory] words as either fact or opinion . . . this becomes an issue of fact for the jury . . . ." *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 188 Conn. 112 n.5.

Probable cause determinations are "fundamentally a fact-specific inquiry." *United States* v. *Khounsavanh*, 113 F.3d 279, 285 (1st Cir. 1997); see also *Commonwealth* v. *Melendez*, 490 Mass. 648, 658, 194 N.E.3d 179 (2022) ("[p]robable cause is a fact-intensive inquiry [that] must be resolved based on the particular facts of [the] case" (internal quotation marks omitted)). Where objective facts central to an allegedly defamatory statement are disputed in sworn affidavits, a summary disposition of the action is inappropriate. That is especially the case given the circumstances here, in which a person holding herself out to be a real estate professional

on Zillow published a post on that real estate market-place website that, as she maintains in her appellate brief, pertained to whether another real estate professional was honest, truthful, and competent to engage in real estate transactions. In response, the plaintiff has averred in his complaint, his affidavit, and his objection to the special motion to dismiss that the defendant's Zillow post contains an untruthful statement of fact. Under the particular facts of this case, the defendant should not be permitted to avail herself of the "special statutory benefit"; *Lafferty* v. *Jones*, supra, 336 Conn. 372; afforded by § 52-196a to summarily defeat the plaintiff's action.[21]

Viewing the pleadings and affidavits of the parties in the light most favorable to the plaintiff, we conclude that the plaintiff satisfied the relatively minimal burden under § 52-196a of establishing probable cause that he will prevail on the merits of his complaint. For that reason, the court properly denied the defendant's special motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

───────────────────

[21] We note that other procedural mechanisms remain available to the defendant to challenge the substance of the plaintiff's complaint, including motions to strike and motions for summary judgment. See Practice Book §§ 10-39 and 17-44.