******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARCIO RENE AGUILAR *v.* JANET EICK
## (AC 47474)

Elgo, Clark and Bishop, Js.*

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant's special motion to dismiss filed pursuant to the anti-SLAPP statute (§ 52-196a). The plaintiff had sought to recover damages for, inter alia, defamation by the defendant in connection with a report the defendant made to the pediatrician of the plaintiff's stepchild, J, regarding the plaintiff's alleged abuse of J. The defendant's report led to an investigation by the Department of Children and Families, which issued a finding substantiating the abuse. Following a hearing, an administrative hearing officer reversed the department's finding. The trial court conducted an evidentiary hearing on the special motion to dismiss, at which three witnesses testified. *Held*:

This court concluded, in light of the plain mandate of § 52-196a, which is intended to quickly dispose of meritless litigation at minimal cost through consideration of the pleadings and supporting affidavits of the parties, that the evidentiary hearing and the trial court's reliance on testimony adduced at that hearing in its ruling were improper, as § 52-196a cannot reasonably be read to authorize a court to conduct an evidentiary hearing on a special motion to dismiss.

The trial court's decision to hold an evidentiary hearing on the defendant's special motion to dismiss and to predicate its ruling on testimony from that hearing constituted reversible error, as this court concluded, on the basis of the plain language of § 52-196a, its legislative history, the policy it was designed to implement, and persuasive authority from other states, that the legislature did not intend to permit a trial court to conduct such evidentiary hearings and, thus, this court remanded the case to permit the parties an opportunity to file any supplemental pleadings or affidavits and to permit argument thereon.

The plaintiff could not prevail on his claim that the doctrine of collateral estoppel precluded the defendant, in further proceedings, from claiming that her report of abuse was truthful and made in good faith, as the issue of whether the defendant made her report of abuse truthfully and in good

---

* This appeal originally was argued before a panel of this court consisting of Judges Elgo, Clark and Prescott. Subsequent to oral argument, Judge Bishop replaced Judge Prescott on the panel, and he has reviewed the record, the briefs and appendices, and the recording of the oral argument prior to participating in this opinion.

faith was neither fully litigated nor definitively determined in the administrative proceeding, and privity between the defendant and the department was lacking.

Argued March 27—officially released August 12, 2025

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *J. Welch*, *J.*, granted the defendant's special motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*John-Henry M. Steele*, for the appellant (plaintiff).

*Michael C. Barbarula*, with whom, on the brief, was *Ryan V. Nobile*, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, Marcio Rene Aguilar, appeals from the judgment of the trial court granting the special motion to dismiss filed by the defendant, Janet Eick, pursuant to General Statutes § 52-196a, Connecticut's anti-SLAPP statute.[1] On appeal, the plaintiff claims that

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). "SLAPP suits . . . are by definition frivolous lawsuits . . . ." *Smith* v. *Supple*, 346 Conn. 928, 935, 293 A.3d 851 (2023); see also *Duracraft Corp.* v. *Holmes Products Corp.*, 427 Mass. 156, 164, 691 N.E.2d 935 (1998) ("SLAPPs are by definition meritless suits" (internal quotation marks omitted)). As one court observed, "[b]ecause winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP's." (Internal quotation marks omitted.) *Dixon* v. *Superior Court*, 30 Cal. App. 4th 733, 741, 36 Cal. Rptr. 2d 687 (1994); accord *Gaudette* v. *Davis*, 160 A.3d 1190, 1194 (Me. 2017) (SLAPP "refers to litigation instituted not to redress legitimate wrongs, but instead to 'dissuade or punish' the defendant's [f]irst [a]mendment exercise of rights through the delay, distraction, and financial burden of defending the suit").

the court improperly concluded that he failed to satisfy his burden under § 52-196a (e) (3) of establishing probable cause that he will prevail on the merits of his complaint.[2] The court reached that conclusion following an evidentiary hearing at which three witnesses testified. In its memorandum of decision, the court expressly relied on that testimony.

Following oral argument before this court, we ordered the parties to file supplemental briefs to address whether § 52-196a authorizes the trial court to conduct an evidentiary hearing on a special motion to dismiss and to predicate its decision on evidence adduced at that hearing. We conclude that issue is dispositive of the present appeal and, accordingly, reverse the judgment of the trial court.

At the outset, we note that § 52-196a constitutes a "special statutory benefit"; *Lafferty* v. *Jones*, 336 Conn. 332, 372, 246 A.3d 429 (2020), cert. denied,     U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021); that "provides a moving party with the opportunity to have [a] lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). "A special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground." *Elder* v.

---

[2] General Statutes § 52-196a (e) (3) provides: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim."

*Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021). Rather, it is an extraordinary procedural vehicle; see *Smith* v. *Supple*, 346 Conn. 928, 946, 293 A.3d 851 (2023); that is "designed to weed out meritless claims at an early stage of litigation . . . ." *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 801, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024); see also *Day* v. *Dodge*, Superior Court, judicial district of New London, Docket No. CV-18-6035362-S (January 25, 2019) (67 Conn. L. Rptr. 750, 755 n.4) (§ 52-196a enacted "to allow courts to dismiss frivolous and vexatious actions").

Section 52-196a (e) (2) instructs that, "[w]hen ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based." As this court recently observed, "[i]n reviewing the trial court's decision granting a special motion to dismiss pursuant to § 52-196a, we take the facts as they appear in the pleadings, affidavits, and other exhibits submitted by the parties and construe them in the light most favorable to the plaintiff." *Birch Hill Recovery Center, LLC* v. *High Watch Recovery Center, Inc.*, 233 Conn. App. 182, 186 n.6,     A.3d     (2025).

At all relevant times, the plaintiff was married to Carmelite Jean Pierre, with whom he had two biological children. Pierre also had two children from a prior relationship, including J,[3] who lived with the plaintiff and Pierre.

Following the birth of her second child with the plaintiff on August 30, 2016, Pierre suffered a severe brain injury and was rendered a quadriplegic. On February

---

[3] In accordance with our policy of protecting the privacy interests of alleged victims of sexual abuse, we decline to identify the alleged victim. See General Statutes § 54-86e.

7, 2017, the Probate Court for the District of Norwalk-Wilton appointed the defendant as the conservator of Pierre's person and estate.[4] In 2018, the defendant commenced a medical malpractice action in her capacity as Pierre's conservator against certain defendants, who agreed to settle the action for $25 million. On June 18, 2020, the Probate Court issued a decree authorizing that settlement.

Due to extraordinary challenges caused by his wife's injuries, the plaintiff asked the defendant to also serve as J's legal guardian. The defendant agreed and became the legal guardian of J in early 2019, with physical custody remaining with the plaintiff. Following the onset of the COVID-19 pandemic, the defendant took physical custody of J with the consent of the plaintiff in an effort to meet J's remote learning needs.

At approximately the same time that the Probate Court authorized the settlement of the medical malpractice action on June 18, 2020, the plaintiff asked the defendant to return J to his custody. Shortly thereafter, the defendant made the report to J's pediatrician that precipitated this litigation.

In her sworn affidavit, the defendant averred in relevant part: "On June 30, 2020, I took [J] to a doctor's appointment. While I was driving on Interstate 95 with [J] in the car, [J] told me that the plaintiff recently had sexually and physically abused her. . . . I obviously was very concerned about the allegations and called [J's] pediatrician. I reported to the pediatrician, who I knew was a mandated reporter of child sexual abuse, that [J] told me that she was physically and sexually abused by the plaintiff. . . . [The] pediatrician

---

[4] The defendant previously worked as a registered nurse and met Pierre while volunteering at Malta House, a nonprofit organization in Norwalk where Pierre then was employed.

reported the alleged abuse to [the Department of Children and Families (department)], which opened an investigation and interviewed witnesses, including me and [J]. During the [department] investigation, I told the investigators that, on June 30, 2020, [J] told me that she had been physically and sexually abused by the plaintiff. [J] was also interviewed during the [department] investigation. . . . I understand that, at the conclusion of [the department's] investigation, [the department] issued a finding substantiating the allegation of abuse. Thereafter, I understand that the plaintiff appealed the substantiation finding . . . [and] a hearing was held. Neither I nor [J] was advised of the hearing or participated in it. . . ." Following that hearing, the administrative hearing officer reversed the department's initial finding of abuse in a decision issued on December 14, 2021 (administrative decision).

The plaintiff commenced the present action in 2023. His complaint contained four counts alleging defamation, fraud, vexatious litigation, and intentional infliction of emotional distress, which all were predicated on the defendant's statements to the pediatrician and department investigators regarding the alleged abuse of J. In response, the defendant filed a special motion to dismiss pursuant to § 52-196a, claiming that "the plaintiff's lawsuit is an attempt to chill [her] right to petition the government on a matter of public concern"—namely, the commission of a crime.[5] The defendant filed a memorandum of law in support of that motion, to which her sworn affidavit was attached.

The plaintiff filed a memorandum in opposition to the special motion to dismiss, in which he argued that

---

[5] See, e.g., *Gleason* v. *Smolinski*, 319 Conn. 394, 415, 125 A.3d 920 (2015) ("[p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern" (internal quotation marks omitted)); *Squeglia* v. *Squeglia*, 234 Conn. 259, 266 n.6, 661 A.2d 1007 (1995) ("the perpetration of a crime by a parent upon a child is a matter of public concern").

the defendant had failed to meet her initial burden under § 52-196a (e) (3) and that "there is probable cause, considering all valid defenses, that [he] will prevail on the merits of his claim."[6] The plaintiff further alleged that "[t]his lawsuit involves a situation where the defendant, motivated by malice and misplaced notions of self-interest, decided to falsely report the plaintiff to [the department] as having abused his stepdaughter. . . . The defendant's efforts to label [him] as a child abuser were found to be unsubstantiated by a [department] administrative hearing officer after a full administrative hearing. . . . Moreover, the findings [in the administrative decision] indicate that the defendant likely coached the plaintiff's stepdaughter to falsely report that [he] was a child abuser." (Citations omitted.) Accompanying that motion was the affidavit of the plaintiff's counsel, Attorney John-Henry M. Steele, in which he stated: "Appended hereto is what I understand to be a true and accurate copy of the [administrative decision], which is referenced in the plaintiff's memorandum in opposition to the defendant's special motion to dismiss."

The court thereafter ordered both the plaintiff's memorandum in opposition to the special motion to dismiss and the copy of the administrative decision attached to that memorandum to be sealed and lodged with the

---

[6] As this court has noted, "the inquiry mandated by § 52-196a is twofold in nature. Pursuant to § 52-196a (e) (3), a party that files a special motion to dismiss bears the initial burden of demonstrating, by a preponderance of the evidence, 'that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern . . . .' If that burden is met, the burden shifts to the party that brought the complaint to demonstrate 'that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . .' General Statutes § 52-196a (e) (3). For a special motion to dismiss to be granted, the court must resolve both prongs in favor of the moving party." *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 787–88.

clerk due to the "privacy interest for minors in keeping documents concerning allegations and investigations of alleged abuse from the public"; see General Statutes §§ 17a-28 and 17a-101k; and the plaintiff's "privacy interest . . . with respect to unsubstantiated findings and records." See General Statutes § 17a-101k. The court further ordered the plaintiff to file a redacted copy of his memorandum in opposition to the special motion to dismiss that omitted "all quotations and references to the [administrative decision] or information contained therein."

On August 22, 2023, the defendant filed a redacted reply to the plaintiff's memorandum in opposition to the special motion to dismiss, in which she emphasized that the plaintiff "has not submitted an affidavit in opposition to the special motion to dismiss in an effort to establish any of the allegations of the complaint." The defendant also noted that the plaintiff "primarily relies" on the administrative decision, which was issued "without ever hearing from or speaking to the defendant or [J]." In addition, the defendant argued that the administrative decision "does not have preclusive effect" in the present case.

On September 18, 2023, the court held an evidentiary hearing on the defendant's special motion to dismiss, at which three witnesses testified.[7] In addition, one exhibit was submitted by the defendant and marked for identification purposes.[8] The parties thereafter filed

[7] The court heard testimony from Candace Kaiser, an investigative social worker with the department, Detective Timothy Marquis of the Norwalk Police Department, and the plaintiff. The defendant called Kaiser as a witness at the outset of the hearing and the plaintiff's counsel thereafter called Marquis and the plaintiff as witnesses.

[8] At the September 18, 2023 evidentiary hearing, the defendant offered a copy of an investigation file that it had subpoenaed from the department regarding the allegations against the plaintiff, which was marked as exhibit A for identification purposes and "not as a full exhibit." The court subsequently granted the defendant's motion to seal that exhibit. There is no indication in the court's memorandum of decision that the court considered either that exhibit or the administrative decision in ruling on the defendant's special

posthearing briefs with the court, in which they discussed the testimony elicited at the evidentiary hearing. In addition, the plaintiff attached two documents labeled as "exhibits" to his posthearing brief. The first is a copy of Pierre's obituary, which indicates that she died on November 17, 2023. The second document is the sworn affidavit of Attorney Daisy P. Garces, who at that time represented the plaintiff in proceedings before the Probate Court.[9]

motion to dismiss. To the contrary, the court stated in its memorandum of decision that it "finds the following facts from the complaint, the affidavit of [the defendant], the affidavit of [Attorney Daisy P. Garces, who represented the plaintiff in proceedings before the Probate Court], and testimony given at the September 18, 2023 court hearing on the special motion to dismiss."

On appeal, neither party has raised any claim regarding the admissibility of the administrative decision or the department's investigation file. See, e.g., *Weaver* v. *McKnight*, 313 Conn. 393, 432–33, 97 A.3d 920 (2014) (prior findings by third party concerning credibility of witness generally inadmissible to impeach credibility in later proceeding); *Manson* v. *Conklin*, 197 Conn. App. 51, 62–63, 231 A.3d 254 (2020) (same); see also E. Prescott, Tate's Handbook of Connecticut Evidence (6th Ed. 2019) § 6.28.5, pp. 390–91; but see *Weaver* v. *McKnight*, supra, 432 n.9 (noting that court "[did] not decide whether a witness may be asked about a determination by a judicial, state administrative agency, or licensing board, not resulting in a perjury conviction, that the witness testified untruthfully in a prior proceeding"). We therefore do not address the propriety of a court's consideration of such evidence in ruling on a special motion to dismiss pursuant to § 52-196a (e) (2).

[9] In her January 16, 2024 affidavit, Garces stated in relevant part that the defendant "has been ordered by the Greenwich Probate Court to account for trust funds she says she received for the benefit of [Pierre], which trust was funded with the net proceeds of a $25,000,000 medical malpractice settlement in favor of [Pierre]"; that the defendant "has accessed the trust funds in the dual capacities as (i) conservator for [Pierre]; and (ii) guardian of [J]"; that, in February, 2023, the Probate Court ordered the defendant "to account for the funds she received" as conservator during the preceding six years; and that, "[t]o date, [the defendant] has failed to provide a proper accounting with proper backup documentation establishing exactly how much of [Pierre's] money she received, how much of it she has spent, and what she spent it on."

In the March 13, 2023 affidavit that the defendant filed as an attachment to her special motion to dismiss, the defendant addressed the trust funds issue, stating in relevant part: "In my role as [Pierre's] Conservator, I retained counsel who brought a medical malpractice action against the facility where

Pursuant to § 52-196a (e) (4), the trial court is obligated to "rule on a special motion to dismiss as soon as practicable." The court in this case issued its memorandum of decision on the special motion to dismiss on March 4, 2024—five and one-half months after the September 18, 2023 evidentiary hearing and almost one year after the special motion to dismiss was filed on March 16, 2023. At the outset of that decision, the court expressly indicated that it "finds the following facts from the complaint, the affidavit of [the defendant], the affidavit of [Garces], and testimony given at the September 18, 2023 court hearing on the special motion to dismiss." The court further noted that Detective Timothy Marquis of the Norwalk Police Department "testified at the court hearing on the special motion to dismiss. According to Detective Marquis, the [Norwalk Police Department] suspended its investigation without charging [the plaintiff]. Detective Marquis found [the plaintiff] credible and responsive during his investigation of the matter. Detective Marquis also found [certain conduct of the defendant] strange."

With respect to the defendant's initial burden under § 52-196a (e) (3); see footnote 6 of this opinion; the court concluded that the defendant had established, by a preponderance of the evidence, that the claims set forth in the plaintiff's complaint were "based on the [defendant's] right to petition the government on a matter of public concern." The court also concluded that the plaintiff had not met his statutory burden of establishing probable cause that he will prevail on any of

[Pierre] gave birth and was injured. In June, 2020, the Probate Court issued a decree authorizing the compromise of the medical malpractice action, which resulted in a substantial settlement. The settlement funds were placed into a trust for the benefit of the plaintiff, [Pierre], and her children . . . . The trust is overseen by an independent Trustee. I do not have access to the trust funds and I am not entitled to the proceeds of the trust. While I have been reimbursed for certain expenses related to my work as [Pierre's] Conservator, I do not take a salary for my role."

the four counts of his complaint. The court thus granted the defendant's special motion to dismiss, and this appeal followed.

On appeal, the plaintiff challenges the court's determination that he failed to establish probable cause that he will prevail on the defamation and intentional infliction of emotional distress counts of his complaint.[10] Following oral argument before this court, we ordered the parties, pursuant to our inherent supervisory authority; see *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155, 84 A.3d 840 (2014); to file supplemental briefs "addressing (1) whether [§] 52-196a authorizes the trial court to conduct an evidentiary hearing on a special motion to dismiss, particularly in light of the recent decision of the Supreme Court of Vermont in *Talandar* v. *Manchester-Murphy*, 331 A.3d 1093 (Vt. 2024), (2) whether § 52-196a (e) (2) permits the trial court to consider evidence adduced at such a hearing in ruling on a special motion to dismiss, and (3), if not, whether a reversal and remand to the trial court for a new hearing is necessary in this case for consideration of the 'pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based.' General Statutes § 52-196a (e) (2)." The parties complied with that directive.

---

[10] In his principal appellate brief, the plaintiff did not challenge the court's determinations (1) that the defendant met her burden of demonstrating that his claims were based on the right to petition the government on a matter of public concern or (2) that the plaintiff failed to establish probable cause that he will prevail on the fraud and vexatious litigation counts of his complaint. As he stated, "the only issue on appeal is whether the trial court properly found that the [defamation and intentional infliction of emotional distress claims] were not supported by probable cause."

In his appellate reply brief, the plaintiff claims that the doctrine of collateral estoppel compels the conclusion that the defendant did not meet her burden under the first prong of § 52-196a (e) (3). We address that contention in part III of this opinion.

The record is adequate to review the legal issues addressed in those supplemental briefs and our consideration thereof will not prejudice either party. Moreover, we conclude that exceptional circumstances exist which warrant review of those issues. Defining the proper parameters of hearings on special motions to dismiss pursuant to § 52-196a "would serve the important interests of judicial efficiency, clarity in the law, and the fair administration of justice"; *Townsend* v. *Commissioner of Correction*, 226 Conn. App. 313, 330, 317 A.3d 1147 (2024); particularly since our anti-SLAPP statute is of recent vintage[11] and there is confusion in the Superior Court on this issue.[12] We therefore exercise our supervisory authority to address those issues of first impression in this state.

I

We begin with the question of whether § 52-196a authorizes the trial court to conduct an evidentiary hearing on a special motion to dismiss and to predicate its decision on evidence adduced at such a hearing. That

[11] See *Pryor* v. *Brignole*, 231 Conn. App. 659, 676, 333 A.3d 1112 (2025) (§ 52-196a "became effective on January 1, 2018, joining dozens of states that already had enacted anti-SLAPP statutes").

[12] Compare, e.g., *Morrison* v. *Hamilton*, Docket No. CV-24-5085997-S, 2025 WL 457331, *2 (Conn. Super. February 5, 2025) (noting that, pursuant to § 52-196a (e) (2), "the court should consider both 'pleadings' and 'supporting and opposing affidavits' " in ruling on special motion to dismiss and characterizing hearing on special motion to dismiss as "oral argument"), and *Khan* v. *Jewish Women International*, Docket No. CV-24-6185738-S, 2025 WL 88669, *1 (Conn. Super. January 9, 2025) ("[t]he court heard arguments on these [special motions to dismiss]"), with *Mayer* v. *Fairfield*, Docket No. CV-23-6059821-S, 2025 WL 39856, *2 (Conn. Super. January 2, 2025) (acknowledging that "[t]he hearing procedure does not require testimony and in the proper case may be decided based on the pleadings and affidavits" but stating that "there are certain cases where a court needs a better record to decide a special motion to dismiss"), and *Flynn* v. *Dixon*, Docket No. CV-22-5027234-S, 2023 WL 2495608, *1 (Conn. Super. March 8, 2023) (ordering continuation of hearing on special motion to dismiss "to permit the parties to present further evidence related to the matters addressed below by affidavit, exhibits and/or testimony").

question presents an issue of statutory interpretation, over which our review is plenary. See *Dept. of Public Health* v. *Estrada*, 349 Conn. 223, 238, 315 A.3d 1081 (2024).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *A. B.*, 341 Conn. 47, 56 n.5, 266 A.3d 849 (2021).

## A

In considering the proper construction of § 52-196a, we do not write on a blank slate but are guided by previous decisions of this court and our Supreme Court. See *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 173, 101 A.3d 200 (2014). Section § 52-196a constitutes a "special statutory benefit"; *Lafferty* v. *Jones*, supra, 336 Conn. 372; that "affords a defendant a substantive right to avoid litigation on the merits that can be costly and burdensome"; *Smith* v. *Supple*, supra,

346 Conn. 949; through "the dismissal of a SLAPP suit."[13] Id., 935. Because "SLAPP suits . . . are by definition frivolous lawsuits"; id.; the procedural mechanism established by § 52-196a is intended to "weed out meritless claims at an early stage of litigation . . . ." *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 801; see also *Smith* v. *Supple*, supra, 965 (*D'Auria, J.*, dissenting) ("[o]n an expedited basis and on a quickly assembled record, a trial judge serves as a gatekeeper, promptly weeding out and dismissing lawsuits that plainly have been filed for [an] illegitimate purpose").

As this court has explained, "[§] 52-196a (e) pertains to the conduct of the court in acting on a special motion to dismiss." *Pryor* v. *Brignole*, 231 Conn. App. 659, 672, 333 A.3d 1112 (2025). Subdivision (1) of § 52-196a (e) provides in relevant part that "[t]he court shall conduct an expedited hearing on a special motion to dismiss," which generally must occur "not later than sixty days after the date of filing of such special motion to dismiss . . . ."[14] Subdivision (2) specifies what materials the court may consider in ruling on a special motion to dismiss and provides: "When ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting

[13] The statutory right to seek a dismissal of a SLAPP suit is memorialized in General Statutes § 52-196a (b), which provides: "In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim."

[14] General Statutes 52-196a (e) (1) permits extension of that sixty day time period when "(A) the court orders specified and limited discovery pursuant to subsection (d) of this section, in which case, the expedited hearing shall be held not later than sixty days after the date on which such specified and limited discovery must be completed, (B) the parties agree to a hearing date that is beyond the sixty-day period, or (C) the court, for good cause shown, is unable to schedule the hearing during the sixty-day period."

to the facts upon which liability or a defense, as the case may be, is based." General Statutes § 52-196a (e) (2). Subdivision (3) of § 52-196a (e) prescribes the legal standard that the court must apply in ruling on a motion to dismiss. See footnotes 2 and 6 of this opinion. Lastly, subdivision (4) of § 52-196a (e) requires the court to "rule on a special motion to dismiss as soon as practicable."

Section 52-196a (e) (1) plainly requires the court to conduct "an expedited hearing" on the special motion to dismiss. At the same time, nothing in that subdivision or any other part of § 52-196a authorizes the court to take evidence at that hearing and hear testimony from witnesses, as the court did in the present case. Had the legislature intended to permit the trial court to conduct evidentiary hearings on special motions to dismiss, it certainly knew how to do so, as it expressly has done in other statutes.[15] See, e.g., General Statutes § 17a-111b (authorizing court to conduct evidentiary hearing on motion for determination that reasonable efforts to reunify parent with child is not required); General Statutes § 46b-129 (authorizing court to conduct evidentiary hearing in connection with contested motion for review of permanency plan in juvenile proceedings); General Statutes § 49-14 (authorizing court to conduct evidentiary hearing on motion for deficiency judgment in foreclosure action); General Statutes § 54-64f (authorizing court to conduct evidentiary hearing in response to allegations that defendant violated conditions of release).

---

[15] See *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly" (internal quotation marks omitted)); see also *Rutter* v. *Janis*, 334 Conn. 722, 734–35, 224 A.3d 525 (2020) (legislature's use of term in other statutes indicates that it knows how to include that terminology "when it intends to do so"); *Tomick* v. *United Parcel Service, Inc.*, 157 Conn. App. 312, 341, 115 A.3d 1143 (2015) (same), aff'd, 324 Conn. 470, 153 A.3d 615 (2016).

Moreover, if the legislature intended the hearing provided for in § 52-196a (e) (1) to be evidentiary in nature, it easily could have added a single word to the statute, so as to read: "The court shall conduct an expedited *evidentiary* hearing on a special motion to dismiss. . . ." The legislature here did not do so. That the legislature enacted § 52-196a to provide "a prompt remedy"; *Elder* v. *Kauffman,* supra, 204 Conn. App. 824; with minimal cost to the moving party; see *Pryor* v. *Brignole,* supra, 231 Conn. App. 664 n.7; suggests that the omission of any reference to an "evidentiary" hearing in § 52-196a (e) (1) was deliberate. We, therefore, "are not permitted to supply statutory language that the legislature may have chosen to omit." *Vaillancourt* v. *New Britain Machine/Litton,* 224 Conn. 382, 396, 618 A.2d 1340 (1993); see also *Branford* v. *Santa Barbara,* 294 Conn. 803, 813, 988 A.2d 221 (2010) ("[w]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained" (internal quotation marks omitted)).

The expedited hearing requirement in § 52-196a (e) (1) also must be read in context of the entire statute. See *Thomas* v. *Dept. of Developmental Services,* 297 Conn. 391, 408, 999 A.2d 682 (2010) (statutory provision cannot be "interpreted in a vacuum, without reference to the statute's other provisions"); *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 116, 584 A.2d 1172 (1991) ("[w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation"). After providing for an expedited hearing in subdivision (1) of § 52-196a (e), the very next subdivision specifies precisely what materials the court may consider in ruling on a special motion to dismiss. Section 52-196a (e) (2) provides: "When ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts

upon which liability or a defense, as the case may be, is based." By its plain language, that statutory imperative confines the court's consideration to the pleadings and the affidavits submitted by the parties; it contains no reference to testimony or other evidence admitted at an evidentiary hearing.

If the legislature intended to permit the court, in ruling on a special motion to dismiss, to consider evidence admitted at a hearing, it presumably would have said so, as the legislatures in at least three other states have done.[16] Principles of both statutory construction and separation of powers preclude this court from rewriting § 52-196a (e) (2) to permit the consideration of such evidence. See *Blondeau* v. *Baltierra*, 337 Conn. 127, 143, 252 A.3d 317 (2020) ("It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.)); *Kilpatrick* v. *Board of Education*, 206 Conn. 25, 28, 535 A.2d 1311 (1988) (courts "cannot read into a statute something that is not there"); *Burke* v. *Board of Representatives*, 148 Conn. 33, 43, 166 A.2d 849 (1961) ("[c]ourts must apply statutes as they find them, whether or not they

---

[16] See Ariz. Rev. Stat. Ann. § 12-751 (C) (2022) ("[i]n making its determination [on an anti-SLAPP motion to dismiss], the court shall conduct an evidentiary hearing or consider the pleadings and supporting and opposing affidavits stating facts on which the liability, defense or action is based"); Nev. Rev. Stat. § 41.660 (3) (d) (2015) (court may "[c]onsider such evidence, written or oral, by witnesses or affidavits" in ruling on special motion to dismiss pursuant to anti-SLAPP statute); Tenn. Code Ann. (2019) § 20-17-105 (d) ("[t]he court may base its decision [on a petition to dismiss pursuant to anti-SLAPP statute] on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based *and on other admissible evidence presented by the parties*" (emphasis added)); but see *Richman* v. *Debity*, Docket No. E2022-00908-COA-R3-CV, 2023 WL 4285290, *2 (Tenn. App. June 30, 2023) (declining to review on inadequate record grounds claim that "the [t]rial [c]ourt erred by adjudicating the [petition to dismiss] based on live witness testimony taken during a post-briefing evidentiary hearing, rather than based on written materials submitted by the [p]arties").

think that the statutes might be improved by the inclusion of other or additional provisions").

We recognize that, with respect to the first prong of the legal standard set forth in § 53-196a (e) (3), the moving party bears the burden of establishing, by a preponderance of the evidence, that "the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern . . . ." As this court recently observed, "although § 52-196a (e) (3) references the preponderance of the evidence standard, *the statutory scheme does not provide for an evidentiary hearing of any kind.* Rather, the court is obligated to hold an expedited hearing on the special motion to dismiss and thereafter render a ruling in light of the 'pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based.' General Statutes § 52-196a (e) (2)." (Emphasis added.) *Pryor* v. *Brignole*, supra, 231 Conn. App. 672 n.16.

In addition, we note that pleadings in this state routinely are accompanied by documentary evidence. See, e.g., *Freidburg* v. *Kurtz*, 210 Conn. App. 420, 429, 270 A.3d 135 (2022) ("[t]he lease agreement was appended to the plaintiff's complaint"); *Doyle Group* v. *Alaskans for Cuddy*, 164 Conn. App. 209, 213–14, 137 A.3d 809 ("[a]ttached to the plaintiff's complaint was a copy of the parties' contract"), cert. denied, 321 Conn. 924, 138 A.3d 284 (2016); *Harris* v. *Stamford*, Docket No. CV-20-5023707-S, 2021 WL 4926119, *2 (Conn. Super. October 1, 2021) ("[a]ttached to the original complaint were . . . photographs taken of claimed highway defects"); *Joyner-Mosby* v. *Stamford Strawberry Hill Assn.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0143439-S (April 28, 1998) (22 Conn.

L. Rptr. 59, 61) ("[a]ttached to the complaint is a map drawn by the plaintiff herself"). Such documentation usually is appended to a complaint as an exhibit and so referenced in the pleading. See, e.g., *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 395 n.2, 234 A.3d 111 (2020) ("[a] copy of the contract was appended to the plaintiff's complaint and designated as exhibit A"). Under Connecticut law, "[a] complaint includes all exhibits attached thereto." (Internal quotation marks omitted.) *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 566, 922 A.2d 280, cert. denied, 284 Conn. 910, 931 A.2d 935 (2007).

In the context of special motions to dismiss, documentary evidence often accompanies both the special motion to dismiss filed by the moving party and the objection filed by the nonmoving party, which properly may be considered in ruling on a special motion to dismiss.[17] See, e.g., *Birch Hill Recovery Center, LLC* v. *High Watch Recovery Center, Inc.*, supra, 233 Conn. App. 192 n.12 (defendant attached, inter alia, newspaper article and "letters and emails submitted by members of the community" as exhibits in support of special motion to dismiss); *Pryor* v. *Brignole*, supra, 231 Conn. App. 666 n.10 (defendant appended, inter alia, copies of attorney grievance complaint and anonymous letter "[a]s exhibits to his special motion to dismiss"); *Chapnick* v. *DiLauro*, 212 Conn. App. 263, 267, 275 A.3d 746

---

[17] In the procedurally similar summary judgment context; see *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 794; *Elder* v. *Kauffman*, supra, 204 Conn. App. 824; "[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202–203, 663 A.2d 1001 (1995). Whether the materials submitted in connection with a special motion to dismiss similarly must be admissible at trial is a question that is not before us in this appeal. Cf. *Sweetwater Union High School District* v. *Gilbane Building Co.*, 6 Cal. 5th 931, 949, 434 P.3d 1152, 243 Cal. Rptr. 3d 880 (2019) (to be considered by court in ruling on anti-SLAPP motion, it must be reasonably possible that materials submitted by parties will be "admissible at trial").

(2022) (defendants "attached a police report" in support of special motions to dismiss); *Gimpelson* v. *Hartford Courant Co.*, *LLC*, Docket No. CV-21-6140154-S, 2022 WL 1585356, *1 n.2 (Conn. Super. May 19, 2022) (defendant attached newspaper article as exhibit to affidavit filed in support of special motion to dismiss); *Baity* v. *Mickley-Gomez*, Docket No. CV-19-6092718-S, 2020 WL 9314537, *2 n.5 (Conn. Super. December 14, 2020) (in addition to affidavits, plaintiff attached copies of email correspondence and incident report as exhibits to objection to special motion to dismiss); *Cevetillo* v. *Lang*, Docket No. CV-19-6031687, 2019 WL 7597451, *2 n.4 (Conn. Super. December 13, 2019) (in addition to affidavit, plaintiff attached "documents that purportedly are social media posts, an email . . . and a detailed timeline prepared by the plaintiff" to objection to special motion to dismiss).

The submission of such evidence to the court by way of the pleadings is consistent with the overarching aim of § 52-196a, which is to resolve SLAPP litigation quickly and at minimal cost. See *Smith* v. *Supple*, supra, 346 Conn. 949; *Priore* v. *Haig*, supra, 344 Conn. 659; *Pryor* v. *Brignole*, supra, 231 Conn. App. 664 n.7; *Elder* v. *Kauffman*, supra, 204 Conn. App. 824. Accordingly, the parties are permitted to present both affidavits and other documentary support for their respective positions on a special motion to dismiss, which the court can consider without resort to an evidentiary hearing. See, e.g., *Sicignano* v. *Pearce*, 228 Conn. App. 664, 666 n.4, 325 A.3d 1127 (2024) ("[t]he [trial] court noted that it considered the plaintiff's complaint, including the exhibits appended thereto, the plaintiff's affidavit and accompanying exhibits in opposition to the defendants' motion to dismiss, and [the defendant's] affidavits in support of its [special] motion to dismiss"), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).

Furthermore, the expedited hearing requirement in § 52-196a (e) (1) must be read in a manner consonant with prior constructions of § 52-196a by our appellate courts. See *New England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013). This court previously has explained that "the procedural mechanism embodied in § 52-196a is 'similar to a motion for summary judgment.' "[18] *Mulvihill* v.

[18] Other courts agree. See, e.g., *Taus* v. *Loftus*, 40 Cal. 4th 683, 714, 151 P.3d 1185, 54 Cal. Rptr. 3d 775 (2007) ("the [l]egislature did not intend that a court, in ruling on a motion . . . under [the anti-SLAPP] statute, would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation"); *L.S.S.* v. *S.A.P.*, 523 P.3d 1280, 1286 (Colo. App. 2022) (special motion to dismiss filed pursuant to anti-SLAPP statute entails summary judgment like procedure), cert. denied, Colorado Supreme Court, Docket No. 22SC880 (July 17, 2023); *American Civil Liberties Union, Inc.* v. *Zeh*, 312 Ga. 647, 652–53, 864 S.E.2d 422 (2021) (motion filed pursuant to anti-SLAPP statute involves summary judgment like procedure); *Hatfield* v. *Herring*, 326 So. 3d 944, 952 (La. App.) ("[a] special motion [pursuant to the anti-SLAPP statute] is a specialized defense motion akin to a motion for summary judgment" (internal quotation marks omitted)), cert. denied, 328 So. 3d 424 (La. 2021); *Young* v. *Davis*, 259 Or. App. 497, 508, 314 P.3d 350 (2013) (goal of special motion pursuant to anti-SLAPP statute is "similar to" summary judgment); *Garcia* v. *Semler*, 663 S.W.3d 270, 276–77 (Tex. App. 2022) (anti-SLAPP statute "provides the same framework to dispose of a . . . motion to dismiss as the summary-judgment framework"); *Barron* v. *Vanier*, 190 S.W.3d 841, 843 (Tex. App. 2006) (anti-SLAPP statute "establishes a procedure whereby the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation"); *Kruger* v. *Daniel*, Docket No. 43155-6-II, 2013 WL 5339143, *3 n.4 (Wn. App. September 17, 2013) (unpublished opinion) (stating that process set forth in Washington anti-SLAPP statute "is identical to that of summary judgment" and court must "accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law" (internal quotation marks omitted)); see also J. Standen, "The Anti-SLAPP Knockout: Litigation Incentives, the Seventh Amendment, and the Lost Tort of Defamation," 62 U. Louisville L. Rev. 293, 319 (2024) ("[Anti-SLAPP] statutes have been compared favorably to summary judgment. . . . Both procedural mechanisms typically require the same or similar standard of proof; both facilitate pre-trial resolution of cases in the hope of saving costs for the courts and the litigants; and both aim to eliminate meritless cases." (Footnotes omitted.)).

*Spinnato*, supra, 228 Conn. App. 794, quoting *Elder* v. *Kauffman*, supra, 204 Conn. App. 824. As one New York court aptly observed, the motion to dismiss filed pursuant to an anti-SLAPP statute "is analogous to an accelerated summary judgment motion . . . ." *Reeves* v. *Associated Newspapers, Ltd.*, 232 App. Div. 3d 10, 24, 218 N.Y.S.3d 19 (2024).

Like motions for summary judgment, special motions to dismiss may be filed immediately after a party is served with a complaint.[19] Moreover, in deciding both special motions to dismiss and motions for summary judgment, the court "does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. . . . [The court] evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. . . . [C]laims with the requisite minimal merit may proceed." (Internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 795; see also *Robinson* v. *V. D.*, 229 Conn. App. 316, 346, 328 A.3d 198 (2024) (§ 52-196a "does not require trial courts to resolve disputed issues of fact or to dismiss claims that otherwise would survive summary judgment"). In ruling on special motions to dismiss, the court must "view the pleadings and affidavits of the parties in the light most favorable

_____

[19] See General Statutes § 52-196a (c) (obligating moving party to file special motion to dismiss "not later than thirty days after the return date of the complaint, or the filing of a counterclaim or cross claim"); Practice Book § 17-44 ("any party may move for a summary judgment as to any cause of action or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial"); see also *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 867 n.8, 675 A.2d 441 (1996) ("a party may move for summary judgment at any time"); *Nash* v. *Roland Dumont Agency, Inc.*, Docket No. CV-18-5018054-S, 2018 WL 6721442, *1 (Conn. Super. November 21, 2018) ("[p]rior to filing an answer, the defendants filed a motion for summary judgment, as permitted by Practice Book § 17-44").

to the nonmoving party" when disputed issues of fact arise; *Mulvihill* v. *Spinnato*, supra, 797; as it does in ruling on motions for summary judgment. See, e.g., *Dur-A-Flex, Inc.* v. *Dy*, 349 Conn. 513, 561, 321 A.3d 295 (2024).

Because the court does not make factual findings or credibility determinations in ruling on special motions to dismiss, the legislature presumably was aware that there is no ostensible need for an evidentiary hearing, particularly since the parties are free to submit affidavits and other documentary evidence as part of their pleadings. If a party believes that a particular witness has information relevant to the special motion to dismiss, they may submit a sworn affidavit from that witness, which § 52-196a (e) (2) authorizes the court to consider in ruling on a special motion to dismiss.[20] Nothing in the present case precluded the parties from submitting affidavits from Kaiser, Detective Marquis, or the plaintiff.[21] See footnote 7 of this opinion.

[20] An illustrative case is *Kaufman* v. *Synnott*, Docket No. CV-18-5018366-S, 2021 WL 4295356 (Conn. Super. August 27, 2021). After one of the defendants filed a special motion to dismiss the claims against her, the plaintiff filed a request to conduct limited discovery in the form of depositions, which the court granted. Id., *3. The depositions were taken and both parties thereafter "filed affidavits [that] referenced testimony from the depositions." Id. After permitting the parties to file memoranda "in support and in opposition to the special motion to dismiss," the court heard "[o]ral argument" from the parties before ultimately granting the special motion to dismiss. Id.; see also *Talandar* v. *Manchester-Murphy*, supra, 331 A.3d 1098–99 (trial court denied plaintiff's "request to present evidence" at hearing on special motion pursuant to Vermont anti-SLAPP statute "but afforded him an opportunity to submit his proffered testimony in the form of an affidavit").

[21] The parties also remained free to submit counteraffidavits to rebut their opponent's allegations. See, e.g., *Costello* v. *Hartford Institute of Accounting, Inc.*, 193 Conn. 160, 164, 475 A.2d 310 (1984) (plaintiff filed affidavit "to counter" affidavit filed by defendant); *Bayview Loan Servicing, LLC* v. *Park City Sports, LLC*, 180 Conn. App. 765, 777, 184 A.3d 1277 (in opposing motion for summary judgment, defendants "did not attach any accompanying counteraffidavits that recited specific facts to rebut the plaintiff's affidavit and documentary evidence"), cert. denied, 330 Conn. 901, 192 A.3d 426 (2018); *Harbison* v. *Norcal Mutual Ins. Co.*, Docket No. C043769, 2004 WL 1175332, *4 (Cal. App. May 27, 2004) (explaining that California anti-SLAPP

In addition, pitfalls abound in permitting evidentiary hearings on special motions to dismiss, which the legislature may have sought to avoid in enacting § 52-196a. Holding evidentiary hearings invariably will increase the time and cost that a moving party must expend to dispose of meritless litigation. In this regard, we note that, although the special motion to dismiss in the present case was filed in March, 2023, the court held an evidentiary hearing in September, 2023, and did not render its decision until March, 2024.

Attorneys, too, will be placed in a difficult position, as they will have to either depose key witnesses in anticipation of the evidentiary hearing at their client's expense or risk conducting a cross-examination of those witnesses without the benefit of prior deposition testimony.[22] In this regard, we note that both the plaintiff and Detective Marquis testified at some length at the September 18, 2023 evidentiary hearing in the present case and were subject to cross-examination.

Moreover, although § 52-196a (g) provides that "[t]he findings or determinations made pursuant to subsections (e) and (f) of this section shall not be admitted into evidence at any later stage of the proceeding or in any subsequent action," § 52-196a is silent as to the efficacy of testimony adduced at an evidentiary hearing on a special motion to dismiss in future proceedings. Is such testimony admissible at trial in cases in which the court denies the special motion to dismiss? Can it be used for impeachment purposes? If the legislature

statute requires court to " 'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' " and noting that "the motions [in that case were] predicated on the first amended complaint, the answers by way of a general denial and affirmative defenses by [the defendants], and affidavits and counter affidavits").

[22] Because "all discovery" is stayed upon the filing of a motion to dismiss; General Statutes § 52-196a (d); attorneys also will be obligated, as a preliminary matter, to file a request for permission to conduct limited discovery pursuant to § 52-196a (d) prior to taking any depositions, which will further increase the time and cost to the parties and the court.

intended to permit the court to hear testimony at an evidentiary hearing, it presumably would have addressed the issue of its admissibility in future proceedings, as it explicitly did in § 52-196a (g) with respect to the court's determinations on a special motion to dismiss.

Furthermore, in deciding both special motions to dismiss and motions for summary judgment,[23] the court does not make credibility determinations or factual findings.[24] See *Anderson* v. *Liberty Lobby, Inc.*, 477

[23] We recognize that the legal standard that governs summary judgment motions is fundamentally distinct from the burden shifting framework set forth in § 52-196a. See footnote 6 of this opinion. To be clear, it is the "procedural mechanism" of § 52-196a that is "similar to a motion for summary judgment." (Internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 794. Although the trial court decides a special motion to dismiss under a different legal standard than that applicable to summary judgment motions, the procedure by which the court reaches its decision—and the materials that it properly may consider—is largely identical.

[24] For that reason, the defendant's reliance on General Statutes §§ 52-278d, 54-46a, and 46b-128a is inapt. In applying those statutes, the trial court makes credibility determinations and factual findings. See, e.g., *Prescott* v. *Gilshteyn*, 227 Conn. App. 553, 555, 322 A.3d 1060 ("[i]n its memorandum of decision granting the plaintiff's application for a prejudgment remedy [pursuant to § 52-278d], the court made the following factual findings and credibility determinations"), cert. denied, 350 Conn. 926, 326 A.3d 248 (2024); *Tatoian* v. *Tyler*, Superior Court, judicial district of Tolland, Docket No. CV-14-6007539-S (May 29, 2015) (60 Conn. L. Rptr. 462, 462) (trial court may have to make "credibility determinations to decide whether probable cause exists" at hearing held pursuant to § 54-46a); *In re Jason W.*, Docket No. JV-14-0850015-A, 2014 WL 7647828, *2 (Conn. Super. December 10, 2014) (trial court makes "factual findings" in determining whether child is competent pursuant to § 46b-128a).

Also unavailing is the defendant's reliance on General Statutes §§ 54-86f and 17a-502. Section 54-86f explicitly provides for an "in camera hearing" on a motion to offer "evidence containing an offer of proof" regarding the sexual conduct of the victim in sexual assault prosecutions and permits the court to grant such a motion if it "finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim . . . ." General Statutes § 54-86f (a). Section 54-86f thus expressly provides for a hearing at which evidence is adduced. The same is true for § 17a-502, the emergency commitment statute, which explicitly confers on "any person detained under this section" who "requests a hearing" the "right to cross-examine all witnesses testifying" at the hearing. General Statutes 17a-502 (d). Section 52-196a, by contrast,

U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment"); *Dur-A-Flex, Inc.* v. *Dy*, supra, 349 Conn. 561 ("a trial court may not resolve credibility issues when ruling on a motion for summary judgment"); *Robinson* v. *V. D.*, supra, 229 Conn. App. 346 ("a court considering a special motion to dismiss does not need to make factual findings" (internal quotation marks omitted)); *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 794–95 (explaining that "courts reviewing [special motions to dismiss] are obligated to construe the pleadings, affidavits, and other proof submitted in the light most favorable to the nonmoving party"; they do not weigh evidence or resolve conflicting factual claims in ruling on anti-SLAPP motion to dismiss); *Soukup* v. *Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291, 139 P.3d 30, 46 Cal. Rptr. 3d 638 (2006) (in deciding anti-SLAPP motion, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant . . . though the court does not *weigh* the credibility or comparative probative strength of competing evidence" (citation omitted; emphasis in original; internal quotation marks omitted)); *All One God Faith, Inc.* v. *Organic & Sustainable Industry Standards, Inc.*, 183 Cal. App. 4th 1186, 1199, 107 Cal. Rptr. 3d 861 (2010) ("the trial court does not make factual findings in ruling on an anti-SLAPP motion"); *Coomer* v. *Salem Media of Colorado, Inc.*, 565 P.3d 1133, 1142 (Colo. App. 2025) ("[w]hen evaluating [the] evidence [submitted in support and opposition to an anti-SLAPP motion], neither the trial court nor we make factual findings, make credibility determinations, or weigh the evidence to resolve

does not provide for the presentation of evidence at the statutorily required hearing.

factual conflicts"); *Dillon* v. *Seattle Deposition Report-ers, LLC*, 179 Wn. App. 41, 88, 316 P.3d 1119 ("[t]he trial court may not find facts or make determinations of credibility" in ruling on anti-SLAPP motion), review granted, 180 Wn. 2d 1009, 325 P.3d 913 (2014), review dismissed (Wn. July 23, 2015).

In the summary judgment context, courts have recognized that evidentiary hearings are fraught with peril. As the United States Court of Appeals for the Tenth Circuit has cautioned, "oral testimony at the summary judgment stage creates a strong temptation for a judge to assess the witness' credibility." *Seamons* v. *Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000); see also *Ahlers* v. *Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) ("[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party"); *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 731, 234 A.3d 1115 (2020) ("testimony" at summary judgment hearing cannot be "considered by the trial court as a part of [a party's] evidentiary submission" (internal quotation marks omitted)); *Wells Fargo Bank, N.A.* v. *Ferraro*, 194 Conn. App. 467, 470–71, 221 A.3d 520 (2019) (trial court improperly "held an evidentiary hearing on the plaintiff's motion for summary judgment" and "improperly permitted, considered and relied on live testimony from witnesses at [that] evidentiary hearing"); *Braca* v. *Utzler*, 134 Conn. App. 460, 463 n.4, 38 A.3d 1249 (2012) ("A summary judgment should be summary; that is, made in a prompt, simple manner without a full-scale trial. The opposition to such a motion may include the filing of affidavits or other documentary evidence . . . but does not include the live testimony of any witnesses." (Citation omitted.)); *Esquivel* v. *Watters*, 286 Kan. 292, 295–96, 183 P.3d 847 (2008) (court "must refrain from the temptation to pass

on credibility and to balance and weigh evidence, which are proper functions for the factfinder at trial" when considering summary judgment motions (internal quotation marks omitted)).

In our view, courts must exercise similar caution in acting on special motions to dismiss. See, e.g., *Key* v. *Tyler*, 34 Cal. App. 5th 505, 520, 246 Cal. Rptr. 3d 224 (2019) ("[T]he anti-SLAPP procedure does not require—or even permit—a court to decide contested facts based upon affidavits. Rather, like a motion for summary judgment, a motion . . . under the anti-SLAPP statute requires a court simply to determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. . . . Such a decision must be made *without* resolving evidentiary conflicts." (Citation omitted; emphasis in original; internal quotation marks omitted.)).

In concluding that the trial court committed reversible error in *Magee Avenue, LLC* v. *Lima Ceramic Tile, LLC*, 183 Conn. App. 575, 193 A.3d 700 (2018), by permitting "live testimony during the hearing on the motion for summary judgment"; id., 585; we explained that "[t]he court's consideration of this testimony necessarily required it to make credibility determinations and factual findings, a reality supported by the court's memorandum of decision . . . ." Id., 586. The court's memorandum of decision in the present case suffers a similar infirmity. At its outset, the court stated that it "*finds the following facts* from the complaint, the affidavit of [the defendant], the affidavit of [Garces], *and testimony given at the September 18, 2023 court hearing* on the special motion to dismiss." (Emphasis added.) Later in its decision, the court found that "[t]he facts are that the defendant merely reported to J's pediatrician and subsequently to the department what she was told by J." The court also found that the defendant's statements

to the pediatrician and department officials were "entitled to a conditional privilege" pursuant to General Statutes (Rev. to 2023) § 17a-101e (b)[25] because they were made in good faith. In so doing, the court overlooked the fact that whether good faith exists is a question of fact; see *Bhatia* v. *Debek*, 287 Conn. 397, 413, 948 A.2d 1009 (2008); that the plaintiff here disputed.[26] See, e.g., *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 381, 260 A.2d 596 (1969) ("[w]hether or not the defendants acted . . . in good faith is a strongly contested genuine issue of material fact"). The present case thus exemplifies the dangers of holding evidentiary hearings on special motions to dismiss at which testimony is offered.[27]

---

[25] General Statutes (Rev. to 2023) § 17a-101e (b) provides in relevant part: "Any person, institution or agency which, in good faith, (1) makes a report pursuant to sections 17a-101a to 17a-101d, inclusive, and 17a-103 . . . shall be immune from any liability, civil or criminal, which might otherwise arise from or be related to the actions taken pursuant to this subsection and shall have the same immunity with respect to any judicial proceeding which results from such report or actions, provided such person did not perpetrate or cause such abuse or neglect. . . ."

[26] We reiterate that, in his complaint, the plaintiff averred that the defendant had made a false report to J's pediatrician soon after (1) the Probate Court authorized the "substantial settlement" of the medical malpractice action and (2) the plaintiff had "asked the defendant to return [J] to his care and custody." He further averred that the defendant had "a significant motive to coach" J to make false accusations of abuse. In his opposition to the special motion to dismiss, the plaintiff argued that the defendant acted in "self-interest," rather than good faith, by making a false report of abuse. He also submitted the sworn affidavit of Attorney Garces, who stated in relevant part that the defendant "has accessed the [settlement] trust funds in the dual capacities as (i) conservator for [Pierre]; and (ii) guardian of [J]," that the Probate Court has ordered the defendant "to account for the funds she received" as conservator for Pierre, and that, "[t]o date, [the defendant] has failed to provide a proper accounting with proper backup documentation establishing exactly how much of [Pierre's] money she received, how much of it she has spent, and what she spent it on." In light of our resolution of this appeal, we do not pass on the question of whether the plaintiff's submissions establish probable cause on any count of his complaint.

[27] Because the trial court in the present case made findings of fact in its memorandum of decision on the defendant's special motion to dismiss,

Lastly, and perhaps most importantly, construing § 52-196a as authorizing the trial court to hold evidentiary hearings on special motions to dismiss would thwart the overarching purpose of that statute, which is to dispose of meritless SLAPP litigation quickly and at minimal cost. See *Smith* v. *Supple*, supra, 346 Conn. 949 (§ 52-196a "affords a [moving party] a substantive right to avoid litigation on the merits that can be costly

there is at least a colorable claim that the plaintiff's constitutional rights may have been violated. See Conn. Const., art. I, § 19 ("[t]he right of trial by jury shall remain inviolate"); *Robinson* v. *V. D.*, supra, 229 Conn. App. 345–47 (concluding that § 52-196a "does not . . . violate the plaintiffs' constitutional right to a jury trial" under Connecticut constitution because it "does not require fact-finding by the court"); see also *Godin* v. *Schencks*, 629 F.3d 79, 90 n.18 (1st Cir. 2010) (observing that "[t]here may be a concern" that Maine anti-SLAPP statute violates seventh amendment right to trial by jury to extent that it allows "a judge to resolve a disputed material issue of fact" in acting on anti-SLAPP motion); *Thurlow* v. *Nelson*, supra, 263 A.3d 501 (noting that "[m]any other courts have recognized and addressed [constitutional] problems with 'fact-finding' within anti-SLAPP cases"); *Leiendecker* v. *Asian Women United of Minnesota*, 895 N.W.2d 623, 635 (Minn. 2017) (concluding that Minnesota anti-SLAPP statute "unconstitutionally instructs [trial] courts to usurp the role of the jury by making pretrial factual findings that can, depending on the findings, result in the complete dismissal of the underlying action"); *Opinion of the Justices*, 138 N.H. 445, 450–51, 641 A.2d 1012 (1994) (concluding in response to certified question that proposed anti-SLAPP statute would violate plaintiff's right "to have all factual issues resolved by the jury" under part I, article 20 of New Hampshire constitution because it would require trial court to "resolve the merits of a disputed factual claim" in acting on anti-SLAPP motion); *Davis* v. *Cox*, 183 Wn. 2d 269, 294, 351 P.3d 862 (2015) (concluding that Washington anti-SLAPP statute "violates the right of trial by jury under article I, section 21 of the Washington Constitution" because it "invades the jury's essential role of deciding debatable questions of fact"); J. Standen, supra, 62 U. Louisville L. Rev. 293–94 ("several key dimensions [of] anti-SLAPP statutes impinge on the plaintiff's jury trial rights to render them constitutionally problematic"). For that reason, we disagree with the defendant's assertion in her supplemental brief that the court's decision to hold an evidentiary hearing, and to make factual findings predicated in part on testimony presented at that hearing, does not warrant reversal because it caused no prejudice to the plaintiff. See, e.g., *Evans* v. *General Motors Corp.*, 277 Conn. 496, 508–19, 893 A.2d 371 (2006) (concluding that trial court improperly denied plaintiffs' constitutional right to jury trial on trade secrets claims and reversing without conducting harmless error analysis).

and burdensome"); *Priore* v. *Haig*, supra, 344 Conn. 659 (§ 52-196a "provides a moving party with the opportunity to have the lawsuit dismissed early in the proceeding"); *Pryor* v. *Brignole*, supra, 231 Conn. App. 664 n.7 (§ 52-196a "is intended to provide a prompt remedy . . . and to minimize expense for moving parties" (citation omitted; internal quotation marks omitted)); cf. *Wells Fargo Bank*, *N.A.* v. *Henderson*, 175 Conn. App. 474, 487, 167 A.3d 1065 (2017) ("[i]f evidentiary presentations and testimony were to be permitted, the intent to reduce litigation costs by way of the summary judgment procedure would be undermined"). In interpreting § 52-196a, this court "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 303, 695 A.2d 1051 (1997); see also *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 276, 545 A.2d 530 (1988) ("[a] statute, of course, should not be interpreted to thwart its purpose").

In light of the plain mandate of § 52-196a, which is intended to quickly dispose of meritless SLAPP litigation at minimal cost through consideration of the "pleadings and supporting and opposing affidavits of the parties," we conclude that § 52-196a cannot reasonably be read to authorize the trial court to conduct an evidentiary hearing on a special motion to dismiss. Accordingly, both the September 18, 2023 evidentiary hearing and the court's reliance on testimony adduced at that hearing in its memorandum of decision were improper.

B

Even if we were to conclude that § 52-196a is ambiguous as to whether the legislature intended to permit evidentiary hearings on special motions to dismiss, which we do not, our construction of § 52-196a would

be the same. The legislative history of § 52-196a, the policy that it was designed to implement, and persuasive authority from other states further convince us that the legislature did not intend evidentiary hearings to be held on special motions to dismiss.

As this court recently noted, "[i]n 2017, the legislature passed No. 17-71 of the 2017 Public Acts (P.A. 17-71), which became effective on January 1, 2018, joining dozens of states that already had enacted anti-SLAPP statutes." *Pryor* v. *Brignole*, supra, 231 Conn. App. 676. Then Representative William Tong, who sponsored the bill in the House of Representatives, explained that "the [anti-SLAPP] statute is designed to protect people from meritless claims [that] are known to be meritless [and] frivolous . . . ." 60 H.R. Proc., Pt. 16, 2017 Sess., pp. 6911–12. He further observed that the special motion to dismiss is "an extraordinary remedy" that permits the court "to terminate . . . litigation early" and opined that "the attorney's fees provision [codified in § 52-196a (f)] is a check on the parties because of the extraordinary nature of the relief" provided by an anti-SLAPP statute. Id., p. 6912, remarks of Representative Tong.

During the legislative debate on P.A. 17-71, Representative Doug Dubitsky specifically inquired whether "an evidentiary hearing . . . would take place" on the special motion to dismiss. Id., p. 6888. In response, Representative Tong explained: "I think it contemplates that the court will certainly conduct a hearing. It doesn't contemplate that a specific evidentiary hearing so docketed would occur but it provides that there will be a hearing on the evidence presented, the pleading, supporting and opposing affidavits . . . . [T]here will be an evidentiary hearing in that sense." Id., p. 6889. That legislative history comports with our conclusion that § 52-196a (e) (2) confines the court's consideration to

the pleadings and the affidavits submitted by the parties in ruling on a special motion to dismiss.

The legislative history of § 52-196a also indicates that it was predicated on, and borrowed heavily from, anti-SLAPP statutes enacted in other states. See 60 S. Proc., Pt. 6, 2017 Sess., p. 2236, remarks of Senator John A. Kissel; see also *Smith* v. *Supple*, supra, 346 Conn. 953 n.22 ("[a]n examination of . . . sister state case law is particularly instructive . . . because the legislative history of our anti-SLAPP statute signifies that it was modeled after anti-SLAPP statutes that came before it in other states"). For that reason, relevant authority from sibling states is pertinent to the present inquiry.

Notably, courts in several jurisdictions have described the hearing required under their anti-SLAPP statutes as "a nonevidentiary hearing." *Jogan Health, LLC* v. *Scripps Media, Inc.*, 565 P.3d 1160, 1166 (Colo. App. 2025); see, e.g., id. ("[t]he [trial] court held a nonevidentiary hearing; reviewed the parties' briefs, documentary evidence, and affidavits; and granted the [defendants'] special motion to dismiss"); *Emory University* v. *Metro Atlanta Task Force for the Homeless, Inc.*, 320 Ga. App. 442, 442, 740 S.E.2d 219 (2013) ("[a]fter a nonevidentiary hearing, the trial court denied the [anti-SLAPP motion], finding that the claims did not come within the scope of the anti-SLAPP statute"); *Gillette Co.* v. *Provost*, 91 Mass. App. 133, 136, 74 N.E.3d 275 (2017) ("[a]fter considering [the affidavits submitted by the parties] and conducting a nonevidentiary hearing, the [trial] judge issued a memorandum of decision and order denying the motion to dismiss"); *Smith* v. *Crestview NuV, LLC*, 565 S.W.3d 793, 796 (Tex. App. 2018) ("[t]he trial court held a nonevidentiary hearing on the motion [to dismiss pursuant to the anti-SLAPP statute]"); cf. *Armin* v. *Riverside Community Hospital*, 5 Cal. App. 5th 810, 816, 210 Cal. Rptr. 3d 388 (2016) ("this case arrives here by

way of an anti-SLAPP motion—sans evidentiary hearing").

Other courts have rejected claims that an evidentiary hearing is required on special motions to dismiss pursuant to an anti-SLAPP statute. See, e.g., *Torres* v. *Armenta*, Docket No. B173553, 2005 WL 591123, *4 (Cal. App. March 15, 2005) (unpublished opinion) ("Appellant's assertion that he was entitled to an evidentiary hearing is also without merit. Under [the anti-SLAPP statute], the trial court . . . considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Internal quotation marks omitted.)); *Cervantes* v. *Law Offices of John G. Hanlin*, Docket No. A101102, 2004 WL 1638174, *7–8 (Cal. App. July 23, 2004) (unpublished opinion) (explaining that, although nonmoving party "must show a 'probability' of prevailing on the challenged causes of action" under second prong of anti-SLAPP statute, "this requirement does not necessitate a mini-trial and full-fledged evidentiary hearing on the substantive merits of the challenged claims" and noting that "the critical evidence was that presented in the affidavits"); *Holder* v. *Young*, Docket Nos. 1145, 1147, 2023 WL 3674691, *20 (Md. App. May 26, 2023) (unpublished opinion) ("the anti-SLAPP statute does not require an evidentiary hearing, but rather a legal hearing on the pleadings"), cert. denied, 485 Md. 144, 300 A.3d 854 (2023), and cert. denied sub nom. *Uncle Eddie's Brokedown Palace, LLC* v. *Young*, 485 Md. 141, 300 A.3d 853 (2023), cert. denied, U.S. , 144 S. Ct. 2522, 219 L. Ed. 2d 1201 (2024); *Covanta Semass, LLC* v. *Earthsource, Inc.*, Docket No. 14-P-651, 2015 WL 1133950, *1 n.3 (Mass. App. March 16, 2015) (unpublished opinion) ("an evidentiary hearing is not required on a motion filed pursuant to [the anti-SLAPP statute]"); *Galleria 2425 Owner, LLC* v. *Drinnon*, Docket No. 14-24-00204-CV, 2025 WL 1109447, *3 (Tex. App. April 15, 2025) ("the trial court should not

consider live testimony on the merits of [an anti-SLAPP] motion to dismiss").[28]

---

[28] In her supplemental brief, the defendant relies on four opinions from other jurisdictions for the proposition that "four states permit evidentiary hearings when ruling on anti-SLAPP motions . . . ." See *Halper* v. *Moore*, Docket No. 23CA0325, 2023 WL 12051888, *3 (Colo. App. December 21, 2023) (unpublished opinion) (noting that, "in the [trial] court's order granting the special motion to dismiss, which it issued after holding the December 2022 evidentiary hearing, the court made credibility findings that undercut the plaintiff's position"); *Jefferson* v. *Stripling*, 316 Ga. App. 197, 200–201, 728 S.E.2d 826 (2012) (plaintiff claimed that trial court improperly failed to hold "an evidentiary hearing on the motion"; Court of Appeals of Georgia concluded that "[t]he record reflects that no hearing was held on the [a]nti–SLAPP defense, as required by the statute" and thus remanded case "for a hearing as required by the [a]nti-SLAPP statute"); *Brooks Automation, Inc.* v. *Blueshift Technologies, Inc.*, Docket No. 06-P-1063, 2007 WL 1713370, *1 (Mass. App. June 14, 2007) (unpublished opinion) ("[t]he trial judge decided, without objection, that the trial would function as an evidentiary hearing on the anti-SLAPP motion"), review denied, 449 Mass. 1110, 873 N.E.2d 247 (2007); *Landry's, Inc.* v. *Animal Legal Defense Fund*, 566 S.W.3d 41, 68 (Tex. App. 2018) (rejecting claim that Texas anti-SLAPP statute violates open courts provision of state constitution by requiring trial court "to decide a motion to dismiss on disputed fact issues without an evidentiary hearing" because factual issues in that case were "immaterial"), rev'd in part on other grounds, 631 S.W.3d 40 (Tex. 2021). None of those cases involved a challenge to the propriety of an evidentiary hearing conducted on an anti-SLAPP motion and none contains any analysis of that issue.

Moreover, all four of those cases appear to be inconsistent with more recent authority from the jurisdictions in question. See, e.g., *Jogan Health, LLC* v. *Scripps Media, Inc.*, supra, 565 P.3d 1166 ("[t]he [trial] court held a nonevidentiary hearing; reviewed the parties' briefs, documentary evidence, and affidavits; and granted the . . . special motion to dismiss" pursuant to Colorado anti-SLAPP statute); *VOA Sunset Housing LP* v. *D'Angelo*, 555 P.3d 635, 643 (Colo. App. 2024) (concluding that trial court "prematurely denied the special motion to dismiss without affording the [plaintiff] an opportunity to offer . . . evidence" and remanding with direction "to reconsider the motion after allowing the parties an opportunity to present supporting and opposing affidavits, as contemplated by [Colo. Rev. Stat. §] 13-20-1101 (3) (b)"); *Tender Care Veterinary Center, Inc.* v. *Lind-Barnett*, 544 P.3d 693, 696 (Colo. App. 2023) ("[a]fter reviewing the parties' briefs and accompanying materials and holding a nonevidentiary hearing, the district court denied defendants' [anti-SLAPP] motion"), cert. granted, 2024 WL 4535434 (Colo. September 3, 2024); *Emory University* v. *Metro Atlanta Task Force for the Homeless, Inc.*, supra, 320 Ga. App. 442 ("[a]fter a nonevidentiary hearing, the trial court denied the motion to dismiss" pursuant to Georgia anti-SLAPP statute); *Gillette Co.* v. *Provost*, supra, 91 Mass. App. 136 ("[a]fter considering [the affidavits submitted by the parties] and conducting a nonevidentiary hearing, the [trial] judge issued a memorandum

The Supreme Court of Vermont recently confronted this question in *Talandar* v. *Manchester-Murphy*, supra, 331 A.3d 1093. Like § 52-196a (e) (2), Vermont's anti-SLAPP statute provides that, "[i]n making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." 12 Vt. Stat. Ann. § 1041 (e) (2) (2023). Moreover, similar to § 52-196a (e) (1), Vermont's anti-SLAPP statute provides that "[t]he court shall hold a hearing on a special motion . . . not more than 30 days after service of the motion unless good cause exists for an extension." 12 Vt. Stat. Ann. § 1041 (d) (2023). In *Talandar*, the plaintiff claimed that the court had improperly denied his request for an evidentiary hearing.[29] *Talandar* v. *Manchester-Murphy*, supra, 1109. Although he conceded that the plain language of that statute does not provide for an evidentiary hearing, the plaintiff argued that the hearing required under 12 Vt. Stat. Ann. § 1041 (d) "would be 'meaningless' in the absence of an opportunity to take evidence, and the denial of his request therefore 'violated the spirit of the statutory hearing requirement.' " Id., 1109–10.

The Supreme Court of Vermont rejected that contention, stating: "We are not persuaded. If the [l]egislature intended the hearing mandated by 12 Vt. Stat. Ann. § 1041 (d) to be evidentiary in nature, it could have

of decision and order denying the motion to dismiss" pursuant to Massachusetts anti-SLAPP statute); *Covanta Semass, LLC* v. *Earthsource, Inc.*, supra, 2015 WL 1133950 *1 n.3 ("an evidentiary hearing is not required on a motion filed pursuant to [the anti-SLAPP statute]"); *Galleria 2425 Owner, LLC* v. *Drinnon*, supra, 2025 WL 1109447, *3 ("the trial court should not consider live testimony on the merits of a . . . motion to dismiss" pursuant to Texas anti-SLAPP statute); *Smith* v. *Crestview NuV, LLC*, supra, 565 S.W.3d 796 ("[t]he trial court held a nonevidentiary hearing on the [anti-SLAPP] motion").

[29] In denying the plaintiff's request to present evidence on the hearing on the anti-SLAPP motion, the trial court "afforded him an opportunity to submit his proffered testimony in the form of an affidavit." *Talandar* v. *Manchester-Murphy*, supra, 331 A.3d 1099.

easily so specified—just as it has in a variety of other statutes. . . . Where, as here, the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such [an] action without legislative authority. . . . Moreover, [i]t is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective. . . . It is not clear why an evidentiary hearing would be necessary to effectuate the anti-SLAPP statute where it specifically contemplates resolution of a special motion . . . based on the pleadings and affidavits. . . . [T]he legislation's underlying purposes are broadly protecting petitioning activity and promoting resolution of SLAPP litigation quickly with minimum cost. . . . Consistent with these goals, it imposes tight timelines on each step in the resolution of [an anti-SLAPP motion] and provides for an award of attorney's fees if the motion is granted. . . . Reading an evidentiary-hearing requirement into the statute would counteract this statutory purpose. Given the great caution that must be exercised in construing the anti-SLAPP statute, we decline [the] plaintiff's invitation to do so." (Citations omitted; internal quotation marks omitted.) Id., 1110. In our view, that reasoning is compelling and consistent with Connecticut precedent on § 52-196a.

The jurisprudence of the Supreme Judicial Court of Maine on its anti-SLAPP statute offers a cautionary tale. Like § 52-196a (e) (1), Maine's anti-SLAPP statute "call[ed] for an expedited hearing" on the special motion to dismiss; *Morse Bros., Inc.* v. *Webster*, 772 A.2d 842, 848 (Me. 2001); and, like § 52-196a (e) (2), provided that, in ruling on a special motion to dismiss, "the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based."[30] Id., 846; see also *Smith* v. *Supple*,

___

[30] Maine repealed its anti-SLAPP statute, Me. Rev. Stat. Ann. tit. 14, § 556, earlier this year, and replaced it with "the Uniform Public Expression Protec-

supra, 346 Conn. 956 n.25 (noting that "Maine's anti-SLAPP statute . . . is also similar in its wording to our anti-SLAPP statute").

Although the Supreme Judicial Court of Maine recognized that the relevant inquiry under the anti-SLAPP statute is twofold in nature; see, e.g., *Morse Bros., Inc.* v. *Webster*, supra, 772 A.2d 849; the second prong of that inquiry bedeviled the court. In *Morse Bros., Inc.*, the court held that, in ruling on a special motion to dismiss, the evidence should be viewed "in the light most favorable to the moving party . . . ." Id. Eleven years later, the court revisited that standard and characterized it as a "converse summary-judgment-like standard . . . ." (Internal quotation marks omitted.) *Nader* v. *Maine Democratic Party*, 41 A.3d 551, 561 (Me. 2012). The court in *Nader* thus overruled *Morse Bros., Inc.*, and, "[t]o avoid an unconstitutional application of the law," held that the anti-SLAPP statute "must be construed, consistent with usual motion-to-dismiss practice, to permit courts to infer that the allegations in a plaintiff's complaint and factual statements in any affidavits responding to a special motion to dismiss are true." Id., 562.

In 2017, the Supreme Judicial Court of Maine abandoned the approach adopted in *Nader*, stating in relevant part: "We now hold . . . contrary to what we indicated in *Nader* [v. *Maine Democratic Party*, supra, 41

tion Act." See Me. Rev. Stat. Ann. tit. 14, § 731 et seq. (2025). That new act provides in relevant part that, "[i]n ruling on a [special motion to dismiss], the court shall consider the pleadings, the motion, any reply or response to the motion and any evidence that could be considered in ruling on a motion for summary judgment . . . ." Me. Rev. Stat. Ann. tit. 14, § 737 (2025). Accordingly, permissible evidence under Maine's current anti-SLAPP statute is confined to that which properly may be presented in connection with a motion for summary judgment. Cf. *Trott* v. *H.D. Goodall Hospital*, 66 A.3d 7, 14 (Me. 2013) ("at the summary judgment stage . . . the undisputed facts are gleaned from paper submissions and not from the testimony of live witnesses").

A.3d 551], that if the plaintiff meets this prima facie burden for any or all of the defendant's petitioning activities, the special motion to dismiss is not then automatically denied. Rather, we establish an additional procedural component whereby, on motion by either party . . . the court conducts an evidentiary hearing. . . . If neither party requests . . . the evidentiary hearing, however, the court shall decide whether the plaintiff has met this burden by a preponderance of the evidence based only on the parties' submissions in seeking and opposing the special motion to dismiss." (Citations omitted; footnotes omitted.) *Gaudette* v. *Davis*, 160 A.3d 1190, 1198–99 (Me. 2017).

In 2021, the court reversed course once again. As it explained: "[W]e are now convinced that in our attempt to craft a process that would address the gaps in direction regarding [the] application of the [anti-SLAPP] statute . . . we have taken a step too far . . . ." (Citation omitted; internal quotation marks omitted.) *Thurlow* v. *Nelson*, 263 A.3d 494, 502 (Me. 2021). The court thus "abandon[ed] the third step we adopted in *Gaudette* [v. *Davis*, supra, 160 A.3d 1190, that added an evidentiary hearing requirement to the anti-SLAPP statute] and return[ed] to the framework . . . adopted in *Nader* [v. *Maine Democratic Party*, supra, 41 A.3d 551] . . . ." Id. As that tortured history in Maine exemplifies, courts should be wary of reading into anti-SLAPP statutes an evidentiary hearing provision that is not expressly stated therein.

We are also cognizant of the policy that § 52-196a was designed to implement. Our Supreme Court has explained that "SLAPP suits . . . are by definition frivolous lawsuits . . . ." *Smith* v. *Supple*, supra, 346 Conn. 935. Critically, § 52-196a was not designed to weed out cases that are weak. Rather, it is intended to quickly dispose of frivolous and meritless ones; see *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 801; as

the legislative history confirms. See, e.g., 60 S. Proc., supra, p. 2235, remarks of Senator Paul R. Doyle (§ 52-196a is intended "to assist people that are sued on their free speech rights to have a means to quickly get rid of frivolous lawsuits"); 60 H.R. Proc., supra, p. 6879, remarks of Representative Tong (§ 52-196a "provides for a special motion to dismiss so that early in the process somebody who's speaking and exercised their constitutional rights can try to dismiss a frivolous or abusive claim that has no merit"); id., pp. 6911–12 ("the statute is designed to protect people from meritless claims [that] are known to be meritless [and] frivolous").

The granting of a special motion to dismiss is "[an] extraordinary remedy . . . ." (Internal quotation marks omitted.) *Smith* v. *Supple*, supra, 346 Conn. 946. Unlike the granting of a motion to strike, in which plaintiffs are afforded the opportunity to file an amended pleading; see Practice Book § 10-44; the granting of a special motion to dismiss terminates the action entirely. For that reason, as well as the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court;[31] see *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 796; special motions to dismiss understandably are "governed by a minimal legal standard" under the second prong of § 52-196a (e) (3). Id., 801; see also

---

[31] As this court has observed, "[t]he legislative history . . . indicates that, in enacting [§ 52-196a], our General Assembly sought to balance a defendant's first amendment rights with a plaintiff's right to pursue a claim in our courts, a right guaranteed by our state constitution." *Pryor* v. *Brignole*, supra, 231 Conn. App. 677. "Representative Tong . . . recognized that a plaintiff who files suit 'has generally a right to have his or her claims heard . . . .' " Id., 678; accord *Palazzo* v. *Alves*, 944 A.2d 144, 150 n.11 (R.I. 2008) (anti-SLAPP statutes " 'pit two sets of fundamental constitutional rights against each other: (1) defendants' rights of free speech and petition and (2) plaintiffs' rights of access to the judicial system and rights to non-falsely maligned reputations' ").

*Elder* v. *Kauffman,* supra, 204 Conn. App. 825 ("[p]roof of probable cause is not as demanding as proof by a preponderance of the evidence"); *People's United Bank* v. *Kudej,* 134 Conn. App. 432, 442, 39 A.3d 1139 (2012) (noting "the very low burden of proof required in a probable cause hearing"); cf. *Mindys Cosmetics, Inc.* v. *Dakar,* 611 F.3d 590, 598 (9th Cir. 2010) ("the second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong"); *Priore* v. *Haig,* supra, 344 Conn. 670 (*D'Auria, J.,* concurring) ("the special motion to dismiss permitted under § 52-196a is easily defeated under a probable cause standard"). To meet that minimal standard, parties may submit affidavits and documentary support appended to their pleadings.

For all of the foregoing reasons, we conclude that the legislature did not intend to permit the trial court to conduct evidentiary hearings on special motions to dismiss. Our construction of § 52-196a is consistent with the plain language of the statute, its legislative history, the policy it was designed to implement, and persuasive authority from other states. The court's decision to hold an evidentiary hearing on the defendant's special motion to dismiss and to predicate its ruling on testimony from that hearing, therefore, constitutes reversible error.

II

Appellate review of a court's decision on a special motion to dismiss is identical to that of the trial court, as it entails consideration of the pleadings and affidavits submitted by the parties; see General Statutes § 52-196a (e) (2); and involves no factual findings or credibility determinations. Accordingly, our review is de novo.[32] See, e.g., *Mulvihill* v. *Spinnato,* supra, 228 Conn. App.

---

[32] There exists no "meaningful distinction between plenary and de novo review," as those terms are used interchangeably. *Ammirata* v. *Zoning Board of Appeals,* 264 Conn. 737, 746 n.13, 826 A.2d 170 (2003).

790 (whether plaintiff established probable cause under second prong of § 52-196a (e) (3) involves question of law subject to plenary review); *Chapnick* v. *DiLauro*, supra, 212 Conn. App. 269 (whether conduct falls within ambit of first prong of § 52-196a (e) (3) presents question of law subject to plenary review); *Marijanovic* v. *Gray, York & Duffy*, 137 Cal. App. 4th 1262, 1270, 40 Cal. Rptr. 3d 867 (2006) ("[o]n appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant made its threshold showing the action was a SLAPP suit and whether the plaintiff established a probability of prevailing"); *Bristol Asphalt, Co.* v. *Rochester Bituminous Products, Inc.*, 493 Mass. 539, 560, 227 N.E.3d 1019 (2024) ("de novo review is required for both stages of our inquiry" under anti-SLAPP statute "because both stages of our framework require resolution of legal questions based entirely on a documentary record, for which 'no special deference' is owed to [the trial] judge"); *USA Lending Group, Inc.* v. *Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023) (appellate review of both prongs of anti-SLAPP statute is de novo).

In light of the particular circumstances of the present case, we nonetheless conclude that a remand to the trial court for further proceedings is necessary. Having concluded that the court improperly held an evidentiary hearing on the defendant's special motion to dismiss, fairness dictates that we remand the matter to the trial court to permit the parties an opportunity to file any supplemental pleadings or affidavits in accordance with this opinion. See, e.g., *Kaufman* v. *Synnott*, Docket No. CV-18-5018366-S, 2021 WL 4295356, *3 (Conn. Super. August 27, 2021) (court exercised its discretion under § 52-196a (d) to permit limited discovery and allowed parties to file affidavits referencing that discovery); *VOA Sunset Housing LP* v. *D'Angelo*, 555 P.3d 635, 643 (Colo. App. 2024) (remanding with direction "to

reconsider the [anti-SLAPP] motion after allowing the parties an opportunity to present supporting and opposing affidavits, as contemplated by [Colo. Rev. Stat. §] 13-20-1101 (3) (b)"); *Talandar* v. *Manchester-Murphy*, supra, 331 A.3d 1099 (court "afforded [the plaintiff] an opportunity to submit his proffered testimony in the form of an affidavit"). The parties also must be provided an opportunity to present argument at a hearing held pursuant to § 52-196a (e) (1) based on "the pleadings and supporting and opposing affidavits" that have been submitted for the court's consideration pursuant to § 52-196a (e) (2).

III

Because a remand is necessary, we briefly address the plaintiff's contention that the doctrine of collateral estoppel precludes the defendant from claiming, in an effort to meet her burden under the first prong of § 52-196a (e) (3), that her report of abuse "was truthful and made in good faith." Ordinarily, we would not address this claim, as the plaintiff first raised it in his appellate reply brief. See *State* v. *Myers*, 178 Conn. App. 102, 106, 174 A.3d 197 (2017) (noting well established principle that arguments cannot be raised for first time in reply brief); see also *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 226–27, 752 A.2d 1069 (2000) ("it is improper to raise a new argument in a reply brief, because doing so deprives the opposing party of the opportunity to respond in writing"). Despite that shortcoming, we nevertheless consider the plaintiff's claim in the interest of judicial economy, as it is likely to arise on remand. See, e.g., *State* v. *Manuel T.*, 337 Conn. 429, 437 n.7, 254 A.3d 278 (2020) (addressing claim that was likely to arise on remand despite fact that it may be unpreserved); *Ghio* v. *Liberty Ins. Underwriters, Inc.*, 212 Conn. App. 754, 780–81 n.8, 276 A.3d 984 (same), cert. denied, 345 Conn. 909, 283 A.3d 506 (2022).

The applicability of the doctrine of collateral estoppel presents a question of law over which our review is plenary. See *Testa* v. *Geressy*, 286 Conn. 291, 306, 943 A.2d 1075 (2008). That doctrine "expresses the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Megin* v. *New Milford*, 125 Conn. App. 35, 38, 6 A.3d 1176 (2010). "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 555, 848 A.2d 352 (2004).

Those requirements are not met in the present case. Although the plaintiff claims that the administrative decision should have preclusive effect in this civil action, that administrative proceeding concerned whetherthe allegations of abuse were substantiated by evidence in the administrative record. The issue of whether the defendant made her report of abuse truthfully and in good faith was neither fully litigated nor definitively determined in that proceeding. Moreover, privity between the defendant and the department is lacking. See *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 76, 208 A.3d 1223 (2019) (preclusion "should be applied only when there exists such an identification in interest of one person with another as to

represent the same legal rights so as to justify preclusion" (internal quotation marks omitted)). The department's interest in protecting minor children from abuse is altogether distinct from the interest of persons who report such abuse and subsequently are the subject of civil actions for defamation, fraud, vexatious litigation, or intentional infliction of emotional distress. Accordingly, the doctrine of collateral estoppel has no application in this case.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.